986 So.2d 634 (2008)
CITY OF HOLLYWOOD, Florida, Appellant,
v.
Francis X. HOGAN and Michael Springstun, Appellees.
Nos. 4D07-392, 4D07-495.
District Court of Appeal of Florida, Fourth District.
June 4, 2008.
Rehearing Denied August 21, 2008.
*637 Daniel L. Abbott and Robert M. Oldershaw, Hollywood, for appellant.
William R. Amlong and Jennifer Daley of Amlong & Amlong, P.A., Fort Lauderdale, and Colleen A. Brannelly of Loughren & Doyle, P.A., Fort Lauderdale, for appellee.
WARNER, J.
The City of Hollywood appeals final judgments awarding damages for age discrimination in favor of two police officers, and the officers appeal the trial court's entry of a judgment notwithstanding the verdict on their retaliation claims. As the cases were tried together, we consolidate the appeals of both final judgments for the purposes of this opinion. The City argues that the officers did not prove their case of age discrimination and, in the alternative, the court erred in denying the City's motion for remittitur or a new trial. On their cross-appeal, the officers contend that the court eliminated their claim for retaliation when there was competent substantial evidence to support it. We affirm `the finding of liability for age discrimination but reverse the denial of the motion for remittitur or new trial, as the compensatory *638 damages were grossly excessive. We also reverse the final judgment in the City's favor on the retaliation claims, because the court erred in granting the motion for judgment notwithstanding the verdict on those claims.

I. Facts
This case involves two police sergeants, Michael Springstun and Frances Hogan, who were passed over for promotion to lieutenant in favor of younger officers. Springstun was first hired by the City of Hollywood Police Department in 1980, becoming a sergeant in 1993. During his long tenure, he received various commendations from his superiors for his work and for his leadership in the department. At one point he was temporarily assigned as a lieutenant for a period of months. Hogan commenced employment with the City in 1976 and was promoted to sergeant in 1984. For a while he worked on an organized crime task force and then a money-laundering task force. He returned to a patrol position. His personnel file contained good performance evaluations.
In order to qualify for promotion to lieutenant, applicants must take a test. The governing civil service ordinance establishes what is known as the "rule of three." When applicants for promotion pass the applicable examination, they are ranked in accordance with their test scores. The police chief may select any one of the top three candidates for a position, at his discretion, so long as he does not act in an illegal, discriminatory fashion. If there is a second opening, the chief may then select any of the top three candidates still on the list. Thus, if there are five positions available, for example, and seven people on the list, the chief could in each case skip over the officers ranked number one and two and thus promote officers three through seven, at his discretion. Each list lasts a year or two. The contract with the police union specifies that all persons who have qualified remain on the list until it expires. However, there is no provision which requires the chief to select only in the order of test qualification. Once the list expires, the officer must re-take the test to be eligible for promotion in the succeeding period.
Sergeant Springstun took the exam in 1996 and was ranked third. However, he did not get promoted before the list expired. He testified that "most of the time, unless somebody was under investigation, they would follow the list," meaning that typically the highest-ranked candidate was chosen for each position. The only time he ever saw them go out of order was if someone was under investigation. That was the policy until the arrival of Chief Scarberry who replaced the retiring chief.
Chief Scarberry took office in 1999. In his first weeks he interviewed eighty members of the department, both supervisory and non-supervisory. He met with Springstun and Hogan as part of this process. Scarberry asked each interviewee to discuss the department's relationship with the community and what might be wrong with the way the police department functioned. He also asked the interviewees to identify the five best leaders in the department. From his interviews, the chief determined that the department was lacking leadership, management, and professionalism. He observed that it had formerly operated in a "country club" atmosphere, which he intended to do away with.
In 2000, Springstun and Hogan both took the lieutenant's exam. Springstun ranked third on the initial list, and Hogan ranked fifth, out of nine candidates. When the first promotion opportunity occurred, the chief appointed Sergeant Affanato, age 40, who was first on the list. At that time Springstun was 49, and Hogan was 48. As *639 Affanato was higher on the list than Springstun and Hogan, neither man expressed an issue with his promotion. Four months later, the chief promoted Sergeant Haberland, age 35, who was second on the list.
The chief made four promotions from January to June 2002. First, he promoted Weatherford, 41, when the "rule of three" list consisted of Springstun, Weatherford, and Hogan in that order. In June 2002 Springstun (age 51) was number one, Hogan (age 50) was number two, and Richard Nardello (age 44) was number three. The chief chose Nardello.
After Springstun was passed over for promotion the first time, he met with Chief Scarberry to find out what he could do to improve his chances for promotion. The chief told him there was nothing he could do to improve his chance. The chief never told him that his leadership skills were a problem. Because Springstun had an excellent background with many commendations, he concluded that the only reason he was passed over was because of his age.
In another June 2002 selection, Mark May, age 48, moved into the third position on the list behind Springstun and Hogan, and May was selected. In August 2002, Jeff Marano, who was 46, moved into the third slot and was chosen. He was head of the police union. In the last opportunity for promotion before the list expired, Mark Smith, age 44, moved into the third slot and was chosen.
At trial, Springstun and Hogan particularly challenged Marano's promotion because of a number of work-related issues, including Marano being named a defendant in several lawsuits involving his police work. They did not challenge the qualifications of the other sergeants receiving promotions.
The decision to promote was made by the chief after a meeting with command staff who offered their input into the promotion decision. Major Jones and Major D'Heron were part of the command staff and at the meeting. Chief Scarberry testified that he made his choices based on who he thought would be the best leaders. When asked how he arrived at that decision, he testified:
There's so many intangible quantities that go along with leadership. I mean does the person exude confidence, do they have respect offrom the entire department.
Am I hearing, am I hearing from the department that that's the logical choice, or am I hearing different from that. Am I hearing, boy, I hope the Chief doesn't make that person just because he is number one on the list. And what am I getting from my command staff. And how have these people performed in just over a year now from the first choice that Sergeant Affanato was selected for lieutenant.
Scarberry did not think that either Springstun or Hogan was the type of leader that he was looking for to improve the department. None of the majors or captains recommended them for promotion. Chief Scarberry admitted that he did not have any opportunity to observe Springstun's or Hogan's work. He also admitted that he did not review their personnel files before making the decision to repeatedly pass them over for promotion. In his deposition, Chief Scarberry claimed that in making such decisions, "sometimes it just comes to me, you know."
Springstun and Hogan presented evidence that age was a substantial factor in the chief's decision-making process. Lieutenant Kordzikowski, one of Springstun's supervisors, told Springstun just before the first promotion that he thought that *640 the police chief felt that "we were all dried up, old, and had nothing to give." Springstun testified that another time Lieutenant Kordzikowski advised "that age was the reason we were not getting promoted. He said that his only conversations with the Chief was [sic] basically when he's going to retire. It appeared he [Kordzikowski] felt that they were trying to push us out." Similarly, in a job evaluation approved by one of the command staff members before the last opportunity for promotion occurred, Springstun's supervising lieutenant in July 2002 wrote, "I encourage you to maintain this attitude as you move closer to the retirement phase of your career."
When Hogan was studying for the lieutenant's exam, Major D'Heron, a member of the command staff, asked Hogan why he was bothering since "you're too old for this now." D'Heron denied making this statement in his testimony. After Hogan was passed over for promotion to lieutenant, Major Jones told him that, during the meeting among the command staff about the promotion, it was said that Hogan was "part of the past, not part of the future."
Officer Larry Boles, age 54, was permitted to testify that when he had been transferred back from a special unit to regular patrol, the chief told him that he was too close to retirement to justify educating him for the special unit. This occurred three years after the 2000 lieutenant promotion list expired.
The City showed that Chief Scarberry had frequently passed over persons on the list in promoting people both for lieutenant and for other positions. Springstun and Hogan also admitted that the chief had promoted others over age 50, just not sergeants, before 2002. Since that time, Scarberry has promoted persons over age 50 to sergeant positions.
Having been rejected for all promotions from the 2000 list, both Springstun and Hogan filed complaints with the Florida Human Relations Commission for age discrimination. Almost immediately, they began to suffer adverse job consequences. While prior to the suit Springstun's performance evaluations had been very good, after filing his complaint he was investigated for improper actions. He also received less overtime than any other sergeant. Hogan became the target of investigations for conduct for which other equally involved officers were not investigated. When they filed suit for age discrimination, they included a charge for retaliation after the filing of their complaint.
After denying motions for directed verdict, the court submitted the case to the jury which found in favor of both Springstun and Hogan on each claim. The jury found that the plaintiffs' age was a substantial and motivating factor that prompted the City to fail to promote them to lieutenant. The jury found that each officer was entitled to $83,544 in back wages and $1 million as compensatory damages for mental anguish, loss of dignity, and other tangible and intangible injuries. The jury also found that the City retaliated against the officers, and awarded each officer an additional $100,000.
The City moved for judgment notwithstanding the verdict, or in the alternative, for a new trial and/or remittitur. The trial court denied the JNOVs except as to the $100,000 verdicts on the retaliation claims, which the trial court granted without explanation. The trial court denied the motion for remittitur. Final judgment was entered on behalf of both plaintiffs. These consolidated appeals follow.

II. Standard of Review
The standard of review of a trial court's ruling on a motion for directed *641 verdict is de novo. Dep't of Children & Family Servs. v. Amora, 944 So.2d 431, 435 (Fla. 4th DCA 2006). A motion for directed verdict should be granted only when the evidence, viewed in a light most favorable to the non-moving party, shows that a jury could not reasonably differ as to the existence of a material fact and that the movant is entitled to judgment as a matter of law. Id.

III. Analytical Process in Age Discrimination Cases
The Florida Civil Rights Act of 1992 (FCRA) prohibits age discrimination in the workplace. See § 760.10(1)(a), Fla. Stat. (2007). It follows federal law, which prohibits age discrimination through the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 623. Federal case law interpreting Title VII and the ADEA applies to cases arising under the FCRA. Brown Distrib. Co. of W. Palm Beach v. Marcell, 890 So.2d 1227, 1230 n. 1 (Fla. 4th DCA 2005).
Springstun and Hogan allege disparate treatment in the denial of their promotions. As the Supreme Court has explained:
When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). That is, the plaintiff's age must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." Ibid.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
The Supreme Court established the order and allocation of proof in a case alleging discrimination in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which involved racial discrimination. However, this same analytical method has been applied in age discrimination cases. See Reeves; O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The plaintiff must first make a prima facie showing of discriminatory treatment. He or she does that by proving: 1) the plaintiff is a member of a protected class, i.e., at least forty years of age; 2) the plaintiff is otherwise qualified for the positions sought; 3) the plaintiff was rejected for the position; 4) the position was filled by a worker who was substantially younger than the plaintiff. Reeves, 530 U.S. at 142, 120 S.Ct. 2097; McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; O'Connor. This may also be accomplished by showing direct evidence of discrimination such as a discriminatory statement by the decision-maker. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1359 (11th Cir.1999).
When this prima facie showing is made, the burden then shifts to the defendant to show that the plaintiff was rejected or someone else was preferred for a legitimate, non-discriminatory reason. Reeves, 530 U.S. at 142, 120 S.Ct. 2097. This is a burden of production, not persuasion, and it involves no credibility assessment. Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Those reasons, however, must be "clear and reasonably specific." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded `a full and fair opportunity' to demonstrate pretext." Id.
*642 Once the defendant presents such evidence, "`the McDonnell Douglas framework-with its presumptions and burdens'-disappear[s], St. Mary's Honor Center, [509 U.S. at 510, 113 S.Ct. 2742], and the sole remaining issue [is] `discrimination vel non,' [United States Postal Service Board of Governors v.] Aikens, [460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)]." Reeves, 530 U.S. at 142-43, 120 S.Ct. 2097. As the ultimate burden of proving intentional discrimination always remains with the plaintiff, he or she must be given the opportunity to prove that the reasons the employer gave to explain its conduct are not the true reasons but a pretext for discrimination. Id. at 143, 120 S.Ct. 2097. Even though the presumptions arising from the plaintiff's prima facie case are gone, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case `and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Id. (quoting. Burdine, 450 U.S. at 255, 101 S.Ct. 1089). The plaintiff must prove this by the preponderance of the evidence. Burdine, 450 U.S. at 253, 101 S.Ct. 1089. As explained in Burdine:
This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.
Id. at 256, 101 S.Ct. 1089. In addition to the evidence the plaintiff may produce as part of a prima facie case, other factors relevant to the inquiry may include the prior treatment of the employee by the employer or the employer's general policy and practice with respect to hiring the protected age class, as revealed by statistical evidence which may show a general pattern of discrimination toward the protected class. McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. 1817.

IV. Prima Facie Case Under McDonnell Douglas

The City contends that Springstun and Hogan did not present a prima facie case under McDonnell Douglas. While it concedes that they met the first three criteriaboth were within the protected class, qualified, and rejected for the promotionit maintains that they failed to prove that they were replaced with persons "substantially younger" within the meaning of the case law. To the City, "substantially younger" means persons at least ten years younger than the plaintiffs; to Springstun and Hogan, the term means at least three years younger. Because, however, there was other evidence tending to show discriminatory intent, we conclude that Springstun and Hogan had to prove only that others who were younger were promoted over them.
Age discrimination statutes protect only employment decisions which disadvantage an older worker in favor of a younger worker. Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004). To prove a prima facie case the McDonnell Douglas framework requires that the plaintiff prove that a younger person was hired or promoted in lieu of the older worker. In O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), the supreme court considered whether the prima facie case required that the younger person be outside of the protected class, i.e., under forty years of age. Concluding that it did not, the court explained:
[T]he prima facie case requires "evidence adequate to create an inference *643 that an employment decision was based on a[n] [illegal] discriminatory criterion.. . ." Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) (emphasis added). In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.
Id. at 312-13, 116 S.Ct. 1307 (emphasis added). O'Connor did not include any further facts to support the prima facie case other than the age disparity between the plaintiff and the worker who replaced him, because the circuit court had dismissed the plaintiff's complaint as a matter of law.
Although there is a split among the circuits as to what is "substantially younger," in all of the circuit cases which have considered the issue, the size of the age disparity is considered only when there is no other evidence of discrimination based on age. In Grosjean v. First Energy Corp., 349 F.3d 332, 338 (6th Cir.2003), after collecting the very many cases decided by the circuits on the issue, the court decided an age difference of six years or less between a plaintiff and a replacement worker is insubstantial, absent direct evidence that age was a factor in the decision. The Seventh Circuit has adopted a bright-line rule that a ten-year age difference is presumptively required to satisfy this element. Hartley v. Wis. Bell, Inc., 124 F.3d 887 (7th Cir.1997). It noted that a smaller age disparity may still satisfy the prima face case if other evidence is presented that the employer considered the plaintiff's age a significant factor. Id. at 893. The Tenth Circuit has refused to establish any bright-line rule as to age disparity, instead leaving the issue to the jury to consider all circumstantial evidence when determining whether age discrimination occurs. Whittington v. Nordam Group, Inc., 429 F.3d 986 (10th Cir.2005).
The Eleventh Circuit has been the most liberal, finding that a mere three-year age difference suffices. See Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir.1997). Carter relied on its earlier decision of Carter v. City of Miami, 870 F.2d 578, 582-83 (11th Cir.1989), which permitted an age discrimination claim where the replaced worker was only three years older than the replacement. In Carter v. City of Miami, however, the plaintiff also presented evidence of age-related discrimination in the form of ageist statements by her supervisor.[1]
The courts are consistent at least in determining that the size of the age disparity is not significant where there is other evidence from which age discrimination can be inferred in order to satisfy the prima facie case. The most significant evidence in this case shows that of the nine persons qualified for promotion on the 2000 list, only the oldest two men were not promoted, even though they scored higher *644 on the qualifying list than at least four or five other persons. The inference from this evidence is at least as compelling as the size of an age disparity. Because they produced "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion," they met the prima facie case requirement of McDonnell Douglas. O'Connor, 517 U.S. at 312, 116 S.Ct. 1307.

A. Non-discriminatory Explanation
As Springstun and Hogan established a prima facie case of age discrimination, the burden then shifted to the City to provide an explanation that they were rejected or the other officers were preferred for promotion for a legitimate non-discriminatory reason. McDonnell Douglas. The reasons must be legally sufficient to justify a judgment for the defendant. Burdine, 450 U.S. at 255, 101 S.Ct. 1089. However, credibility is not an issue at this juncture.
The chief selected the other officers for promotion over Springstun and Hogan, because he considered the promoted officers to be better leaders, better managers and administrators, and possessing superior "people" skills than Springstun or Hogan. Leadership skill was his primary concern and criteria for promotion. As to Springstun in particular, he considered the fact that he had not re-taken the test after his first qualifying score in 1996 as indicating a lack of perseverance and dedication. As to Hogan, there was concern that he was not fully devoted to his profession and had side interests which engaged his time even while on duty. Scarberry also did not receive any comments from his command staff indicating that Springstun or Hogan should be considered because they would be effective leaders. The others in the command staff highly recommended the promoted officers.
Springstun and Hogan argue that the chief's primary criteria of "leadership" is subjective and thus not a sufficient non-discriminatory reason to rebut the presumption of the prima facie case. However, the mere fact that the reasons are subjective ones does not constitute proof of an intent to discriminate. Denney v. City of Albany, 247 F.3d 1172, 1185-86 (11th Cir.2001). "A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman v. AI Transp., 229 F.3d 1012, 1034 (11th Cir.2000). Springstun and Hogan contend that the City presented no reasonably specific factual basis for Scarberry's opinion, thus rendering it insufficient. In Chapman, the employer used the subjective reason of a poor interview as a non-discriminatory reason for refusing to hire the plaintiff. The employer explained that Chapman had not been concise in his answers and did not take an aggressive approach in asking questions about the position, whereas the other applicants made a better presentation of themselves. The court concluded that the poor interview subjective reason was supported by reasonably specific references to the interview and thus presented a clear and reasonably specific factual basis.
Chief Scarberry's subjective reason is at least as reasonably specific as the reasons found in Chapman. First, there was ample evidence of the qualifications and exemplary leadership of the promoted officers. As to Springstun, the chief thought that he showed lack of dedication and perseverance by failing to retake the examination after having taken it and passed it in the mid 1990s. As to Hogan, he was reported to have outside interests that took his attention away from his job. As to both, none of the command staff recommended *645 either Springstun or Hogan in preference to the other promoted officers.
These are sufficiently specific, legally sufficient, and non-discriminatory reasons for selecting the other individuals over the two for promotion. As noted in Chapman,
courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior."

Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted)); see also Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir.1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.")[.]
229 F.3d at 1030. The City's evidence removed the presumption of discrimination.

B. Proof of Pretext
With the presumption removed, Springstun and Hogan retain the burden of proving that they were the victims of age discrimination. "That is, the plaintiff's age must have `actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" Reeves, 530 U.S. at 141, 120 S.Ct. 2097 (emphasis supplied) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). This may be accomplished by showing directly that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. 1089. When the employer's reasons are shown to be false, this provides circumstantial evidence probative of intentional discrimination. However, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." Reeves, 530 U.S. at 147, 120 S.Ct. 2097 (emphasis supplied).
Writing on the issue of qualifications, in Ash v. Tyson Foods, Inc., 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006), the Court noted:
Under this Court's decisions, qualifications evidence may suffice, at least in some circumstances, to show pretext. See Patterson v. McLean Credit Union, 491 U.S. 164, 187-188, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (indicating a plaintiff "might seek to demonstrate that respondent's claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position"), superseded on other grounds by 42 U.S.C. § 1981(b); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination"); cf. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the *646 trier of fact to conclude that the employer unlawfully discriminated").
While the Court did not adopt a definitive standard for reviewing qualification evidence, it cited with approval Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004), where the court stated that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Other courts have required a plaintiff's qualifications to be "clearly superior" to those of the selected employee. Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1194 (9th Cir.2003).
Springstun and Hogan did not show that they were "clearly superior" to the promoted officers. They proved they were qualified both by their prior service and scores on the qualification test. Other officers also testified that both were good leaders and had that reputation in the department. However, they did not show that the non-discriminatory reason provided by the chief was necessarily false. That it was not completely false, however, does not mean that age discrimination did not occur. Showing that the reasons given by the employer are false is only one form of circumstantial evidence in an age discrimination case. If the proffered reasons are false, then the lack of any non-discriminatory reason combined with the plaintiff's prima facie case may be sufficient to permit the trier of fact to conclude that age discrimination is the most likely reason for the failure to promote. Reeves. It does not compel such a result, nor does the lack of falsity demand a verdict in favor of the employer where other evidence could persuade the trier of fact of discriminatory intent.
Springstun and Hogan provided substantial other evidence to support their claim that the determinative factor in the promotion decisions was their age. Lieutenant Kordzikowski told Springstun that the chief only talked about Kordzikowski's own retirement and made it clear that the chief thought "they were too old."[2] These statements infer an age bias on the part of the chief.
Major D'Heron, a member of the command staff, told Hogan he was too old for a lieutenant's position. Even though the final selection was his, the chief took into consideration the comments of his command staff before finalizing his selection. Evidence of their views provides at least circumstantial evidence of age discrimination being a determinative factor in the promotion process. See Miles v. M.N.C., 750 F.2d 867, 875 (11th Cir.1985) (racial slur by person closely involved in hiring decision is admissible as evidence of discrimination). That a member of the command staff opposed promotion based upon age and thus influenced the decision is further supported by the fact that the chief made no independent investigation of the qualifications of either Springstun or Hogan. See Long v. Eastfield Coll., 88 F.3d 300 (5th Cir.1996) (where employer failed to perform his own independent investigation *647 of workplace incident and relied on reports of employees who had a discriminatory animus towards plaintiff and recommended her termination, causal link between discriminatory animus and termination remains intact.).
Another command staff member, Major Granteed, made comments about Springstun's grey hair making him look old. Granteed also approved the yearly evaluation that noted how Springstun was moving into the "retirement phase" of his career. Officer Larry Boles, age 54, testified that the chief told him that the reason Boles had been transferred out of a preferred assignment was because he did not have enough time left in his employment, implying that the reassignment was due to his age. Although this occurred three years after the Springstun and Hogan incidents, we conclude that the court did not err in admitting it as indirect evidence of the chief's attitude about age.
We have recited only the most salient aspects of the circumstantial evidence from which the jury could infer an anti-age bias in the department and on the part of the chief. Although the City offered contrary evidence on almost every point, the issues of credibility and weight of the evidence are for the jury to determine. Suffice it to say, combined with the evidence to support the prima facie case (including the fact that only the two oldest persons on the 2000 list were not promoted to lieutenant), and interpreting the evidence most favorably to Springstun and Hogan, a reasonable jury could conclude that age was the determinative factor in the chief's promotion selections. We therefore reject the City's argument that the trial court should have directed a verdict in its favor.

V. Retaliation Claim
The court erred in granting the motion for judgment of acquittal on the retaliation claims. Not only did the City not move for directed verdicts on these claims at trial, there was sufficient evidence to withstand such motions. We thus reverse and remand for the trial court to enter judgment for both Springstun and Hogan on their claims of retaliation.

VI. Excessiveness of Non-Economic Damages
The City filed a motion for remittitur or new trial, but the trial court denied it. "Remittitur cannot be granted unless the amount of damages is so excessive that it shocks the judicial conscience and indicates that the jury has been influenced by passion or prejudice." Weinstein Design Group, Inc. v. Fielder, 884 So.2d 990, 1002 (Fla. 4th DCA 2004). We review an order denying a motion for remittitur or new trial under an abuse of discretion standard. Glabman v. De La Cruz, 954 So.2d 60, 62 (Fla. 3d DCA 2007). The jury awarded each plaintiff $1,183,544. Of that sum, $1,100,000 was awarded for compensatory damages other than lost wages. We conclude that the award to each individual for the non-economic damages was grossly excessive. Failure to grant the motion for remittitur constituted an abuse of discretion.
After the chief passed over Springstun for promotion, he felt stressed and went to a cardiologist who diagnosed him with high blood pressure. However, the record on appeal does not contain testimony causally relating the denial of promotion to the onset of high blood pressure. Springstun testified that he felt depressed for four to six months and had to drink a glass of wine to fall asleep. During this time he also threw out his extensive police shoulder patch collection that he had accumulated over the years. Hogan did not testify to any physical injury at all. He said he was embarrassed and hurt that he had not *648 been promoted. Neither sought psychological counseling. Neither lost income in the sense of being fired and having to face the anxieties of unemployment. Both continued to work until their retirement, and both had retired by the time of the trial. In closing, their attorney did not mention Springstun's high blood pressure or his patch collection. She requested an award for each man's loss of dignity for the 800 days from their rejection for promotion to their retirement.
When a defendant files a motion for remittitur, the trial court must evaluate the verdict in light of the evidence presented at trial. In section 768.74, Florida Statutes, the legislature made its intent specific that "awards of damages be subject to close scrutiny by the courts and that all such awards be adequate and not excessive." § 768.74(3), Fla. Stat. The statute provides criteria that the court should examine:
(5) In determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any, that such award exceeds a reasonable range of damages or is inadequate, the court shall consider the following criteria:
(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;

(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
(emphasis supplied). This is a generic list. The Fourth Circuit created a more specific list of criteria for assessing emotional damages in a discrimination case in Price v. City of Charlotte, N.C., 93 F.3d 1241, 1254 (4th Cir.1996):
(1) whether the plaintiff lost the esteem of her peers; (2) whether the plaintiff suffered physical injury as a consequence of her emotional distress; (3) whether the plaintiff received psychological counseling or other medical treatment; (4) whether the plaintiff suffered a loss of income; (5) the degree of emotional distress; (6) the context of the events surrounding the distress; (7) the evidence tending to corroborate the plaintiff's testimony; (8) the nexus between the challenged conduct and the emotional distress; and (9) any mitigating circumstances.
Bernstein v. Sephora, 182 F.Supp.2d 1214, 1227 (S.D.Fla.2002) (citing Price, 93 F.3d at 1254). Whether one applies the more general provisions in the statute or the more specific criteria in Price, the evidence does not show significant emotional damages.
Pursuant to the statute, the trial court must determine the amount, if any, by which an award exceeds a reasonable range of damages. Comparing the awards entered in other cases of discrimination can be useful in determining that question. Id. at 1229 (quoting Mathie v. Fries, 121 F.3d 808, 813 (2d Cir.1997)); Epstein v. Kalvin-Miller Int'l, Inc., 139 F.Supp.2d 469, 480 (S.D.N.Y.2001) (citing Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 684 (2d Cir.1993)). As a district court *649 judge sitting in the Southern District of New York has explained:
In evaluating the reasonability of a jury award in a retaliation or discrimination suit, it is useful to look at the "duration, extent and consequences of the mental anguish suffered by plaintiff" and to see whether the case fits into a class of "so-called `garden-variety' mental-anguish claims, in which the awards hover in the range of $5,000 to $30,000." In such cases, the evidence usually is limited to the testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or consequences of the condition.
Reiter v. Metro. Transp. Auth. of N.Y., MTA, 2003 WL 22271223, *9 (S.D.N.Y. Sept. 30, 2003) (citation omitted); see also Epstein, 139 F.Supp.2d at 480 ("A `garden variety' emotional distress claim is one that did not require medical treatment."). In Reiter, the plaintiff merely testified to feeling "stressed," "nervous" "on edge" and "clammy." 2003 WL 22271223 at *5. The court found that an award of $140,000 was so excessive as to shock the judicial conscience and reduced the award by remittitur to $10,000. In Epstein, the court upheld a jury award of $54,000 for emotional distress where the emotional distress aggravated the plaintiff's physical symptoms. 139 F.Supp.2d at 481.
Congress has capped damage awards in discrimination cases at a maximum of $300,000. See Bernstein, 182 F.Supp.2d at 1229. Thus, "an award of $150,000 for emotional distress should be viewed as an upper threshold." Id. The maximum amount awardable under the $300,000 statutory cap "should be reserved for the most egregious cases of unlawful conduct." Nyman v. Fed. Deposit Ins. Corp., 967 F.Supp. 1562, 1572 (D.D.C.1997). The Bernstein court went on to remit a $150,000 emotional distress award to $75,000 on those facts.
Looking specifically at cases of age discrimination, the jury's award also shocks the conscience. In Abrams v. Lightolier, Inc., 841 F.Supp. 584 (D.N.J.1994), the jury awarded plaintiff pain and suffering of $100,000. The court reduced it by remittitur to $2,500 based on the paucity of evidence regarding plaintiff's actual mental distress. In Sanchez v. Puerto Rico Oil Co., 37 F.3d 712 (1st Cir.1994), the appellate court affirmed the trial court's remittitur of a $150,000 mental and moral suffering claim down to $37,500, despite the fact that the defendant's wrongful discharge drove the plaintiff into bankruptcy. In Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340 (11th Cir.2000), the plaintiff did not corroborate his claimed injuries with objective medical testimony nonetheless the court upheld an award of $150,000 in that age discrimination case. This is the only case cited by the plaintiffs in support of their award, and it has few facts for us to determine the extent of the evidence to support the amount of the award.
The jury awarded Springstun and Hogan $1 million each for age discrimination and $100,000 each for retaliation where there was little if any evidence of any emotional injury as a result of the chief's failure to promote and scant evidence to support any further injuries for the retaliation. Since it is almost impossible to separate these claims, this only furthers our resolution that the million dollar awards shock the judicial conscience and require a substantial remittitur. While Springstun may have proved more injury, depending upon the causal connection between the promotion decisions and his high blood pressure, Hogan proved little emotional injury. His case, in particular, is *650 more of the typical case discussed in Reiter with a range of $5,000 to $30,000. Springstun's case may be worth more, but the highest award allowed for in any case was $150,000.
We reverse the awards for non-economic damages and remand for the trial court to determine a remittitur amount consistent with the criteria set forth in this opinion and for a new trial should the plaintiffs refuse the remitted amounts.
Affirmed in part; reversed in part, and remanded for further proceedings and judgments consistent with this opinion.
STONE and GROSS, JJ., concur.
NOTES
[1] Carter v. City of Miami was decided before the Supreme Court decided in O'Connor that the prima facie case of McDonnell Douglas requires a showing that the replacement be "substantially younger" than the plaintiff. As Justice Scalia used an example of a three-year age difference as suggesting that this "thin evidence" would not suffice for a prima facie showing, we conclude that such a small difference does not satisfy the fourth prong of the McDonnell Douglas test. O'Connor, 517 U.S. at 312, 116 S.Ct. 1307. Accord Hartley, 124 F.3d at 892 (noting that O'Connor seemingly rejected a three-year age disparity as satisfying the "sufficiently younger" criteria for age discrimination).
[2] Although this testimony was objected to at trial on several grounds, the only argument that the City makes in its brief is that Springstun's testimony as to what Kordzikowski said should not have been admitted, as its probative value outweighed its prejudicial effect. See § 90.403, Fla. Stat. The City argues that because Kordzikowski's statements were not comments attributed to the chief regarding Springstun's promotion, they represented only "tenuous and disconnected comments." The City cites no cases to support its position. We reject this argument and conclude that the trial court did not err in admitting the testimony. This was circumstantial evidence that the chief himself was trying to get older people in the department to retire.