[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12650
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-00265-WS-CAS

LINDA JACKSON,

Plaintiff-Appellant,

versus

AGENCY FOR PERSONS WITH DISABILITIES STATE OF FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 14, 2015)

Before TJOLFAT, MARCUS and JULIE CARNES, Circuit Judges.

PER CURIAM:

Linda Jackson, a female with an eye condition, appeals the district court's grant of summary judgment to her former employer, the Florida Agency for Persons with Disabilities ("the Agency") on her disability discrimination claim

under the Rehabilitation Act, 29 U.S.C. § 794(a), and her retaliation claim under Florida Workers' Compensation Law, Fla. Stat. § 440.205.  On appeal, Jackson argues that: (1) she produced evidence to show that the Agency's proffered legitimate reason for her termination was a pretext for discrimination on the basis of her disabling eye condition; and (2) she produced evidence to show that the Agency's proffered legitimate reason for her termination was a pretext for retaliation for having sought and received workers' compensation benefits.  After careful review, we affirm.

We review a district court's grant of summary judgment de novo, applying the same standard used by the district court and drawing all factual inferences in the light most favorable to the nonmovant.  Johnson v. Bd. of Regents, 263 F.3d 1234, 1242-43 (11th Cir. 2001).  Under Rule 56, summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  To overcome a motion for summary judgment, the nonmoving party must present more than a "mere scintilla" of evidence supporting her position.  Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir. 2006) (quotations omitted).

First, we find no merit to Jackson's argument that the district court erred in granting summary judgment on her discrimination claim alleging that the Agency terminated her on the basis of her disabling eye condition.   The federal

2

Rehabilitation Act prohibits employers from discriminating against disabled persons.  See 29 U.S.C. § 794(a).  Discrimination claims brought under the Rehabilitation Act are governed by the same standard as claims brought under the Americans with Disabilities Act of 1990 ("ADA").  Id. § 794(d); Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).  To prevail on a claim brought under the Rehabilitation Act, however, an employee must show that she was discriminated against "solely by reason of [her] disability."  Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (emphasis omitted) (quoting 29 U.S.C. § 794(a)).  If there is no direct evidence that an employer discriminated against a plaintiff on the basis of her disability, she may rely on the McDonnell Douglas framework to establish her case through circumstantial evidence.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 251-53 (1981); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

Under McDonnell Douglas, a plaintiff must first make out a prima facie case of discrimination.  Burdine, 450 U.S. at 252-53.  If the plaintiff satisfies that burden, and the employer then produces a legitimate, nondiscriminatory reason to explain the challenged action, the plaintiff must then show that the defendant's proffered explanation was a pretext for discrimination.  Id. at 253.  Throughout each stage in the process, the plaintiff retains the burden of persuading the court that she has been the victim of intentional discrimination, which she can meet

3

either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. Id. at 256.

The plaintiff bears the burden of showing by a preponderance of the evidence that the stated reasons were pretextual and the true motivation was discriminatory. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of [her] performance." Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997). We've held that, when an employer relies on a report in making an employment decision, the accuracy of the report is irrelevant to the pretext inquiry, which is limited to determining whether the employer, relying on the report, honestly believed the employee had done wrong. Hawkins v. Ceco Corp., 883 F.2d 977, 980 n.2 (11th Cir. 1989). Similarly, an employer's mistaken belief about an employee's performance does not establish pretext so long as the employer honestly believed her performance was unsatisfactory. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991). Further, "[a] lack of concern about the accuracy of a decision will not establish pretext as a matter of law." Hawkins, 883 F.2d at 980 n.2.

In conducting the pretext inquiry, we evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistences, incoherencies, or

4

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). A plaintiff may not show pretext by recasting an employer's proffered nondiscriminatory reasons or by substituting her business judgment for that of the employer. Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). If the proffered reason is one that might motivate a reasonable employer, the plaintiff must meet the proffered reason "head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id.

Where an employer's proffered reason for termination is the violation of a workplace rule, we have held that explanation to be "arguably pretextual" when a plaintiff can submit evidence that: (1) "she did not violate the cited work rule"; or (2) "if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." Damon v. Fleming Supermarkets of Fl., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999). In evaluating whether other employees outside the plaintiff's protected class were treated more favorably, it is the plaintiff's burden to show that the employees were "similarly situated in all relevant respects." Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (quotation omitted). For example, "differences in treatment by different supervisors or decision makers can seldom be the basis for a

viable claim of discrimination." Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 n.5 (11th Cir. 2001). In instances where the plaintiff is disciplined for misconduct, it is the plaintiff's burden to show other employees were engaged in "nearly identical" conduct and yet were treated more favorably. Burke-Fowler v. Orange Cnty., 447 F.3d 1319, 1323 & n.2 (11th Cir. 2006).

A plaintiff can establish a causal relationship between her statutorily protected activity and an adverse employment action by showing a "close temporal proximity" between the two events. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation omitted) (addressing a retaliation claim under the ADA). Mere temporal proximity, without more, however, must be "very close." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (quotation omitted) (addressing a retaliation claim under Title VII of the Civil Rights Act of 1964). "[A] period as much as one month between the protected expression and the adverse action is not too protracted." Higdon, 393 F.3d at 1220. But "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" to support an inference of causation. Thomas, 506 F.3d at 1364.

In this case, Jackson failed to raise a genuine dispute of material fact about whether the Agency's proffered reason for her termination was pretextual. For starters, because the Agency's burden of production was "exceedingly light," it

6

sufficiently proffered a legitimate reason for her termination -- its belief that Jackson acted inappropriately during an incident with a male resident of the ward in which Jackson worked.  In an effort to show pretext, Jackson claims that the Agency improperly relied on a Florida Department of Children and Families ("DCF") Investigative Summary ("DCF Report") reporting that Jackson had bitten the resident, and incorrectly interpreted a video of the incident.  But under our law, the Agency only needed to <u>believe</u> that Jackson behaved inappropriately, even if the Agency misinterpreted the DCF Report or exhibited a lack of concern about its accuracy.  As for the video, it could reasonably be interpreted to show that Jackson acted inappropriately during the incident even if the resident initiated the confrontation and attacked her.  Jackson also argues that the official who fired her, Sandra Koon, noted shortly after the incident that Jackson had not done anything wrong.  However, this statement does not rebut Koon's assertion that, after attending a management committee meeting and reviewing the DCF Report, the video of the incident, and Jackson's disciplinary history, she concluded that Jackson had in fact acted inappropriately during the incident.  In short, Jackson simply has failed to present any genuine dispute of fact about whether the Agency honestly believed that she acted inappropriately.

We are also unconvinced that Jackson has raised a genuine dispute of fact about pretext by pointing to the timing of her termination, which was close in time

7

to her second eye surgery and the termination of her workers' compensation benefits, and far in time from the incident with the resident. Indeed, contrary to Jackson's claim, the long investigative process performed by the Agency and DCF may have reflected an intent to make a careful and fully informed decision about whether to discipline Jackson for her involvement in the incident. To the extent that timing could be indicative of pretext, it constituted no more than a "scintilla" of evidence, and could not lead a reasonable factfinder to find the Agency's proffered legitimate reason unworthy of credence, see Combs, 106 F.3d at 1538. In addition, evidence of events that took place two years prior to Jackson's termination does not constitute evidence that the Agency intentionally discriminated against her.

Jackson also failed to show that similarly situated, nondisabled employees were treated more favorably than she was. Among other things, she fails to show that any of these other employees had a disciplinary history similar to hers, or that they had the same supervisors and faced the same decision-makers. In short, Jackson failed to rebut the Agency's proffered legitimate, nondiscriminatory reason for her termination, and the district court did not err in granting summary judgment to the Agency on this ground.

Finally, we reject Jackson's claim that the district court erred in granting summary judgment to the Agency on Jackson's claim alleging that the Agency

8

retaliated against her for having sought and received workers' compensation benefits. Section 440.205 of the Florida Statutes provides that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. § 440.205. The Florida Supreme Court has held that § 440.205 creates a cause of action for employees who are subject to retaliatory treatment by their employers for attempting to claim workers' compensation. Bifulco v. Patient Bus. & Fin. Servs., Inc., 39 So. 3d 1255, 1257 (Fla. 2010).

As we've already discussed, the temporal proximity between Jackson's claim for workers' compensation benefits and her termination -- in the context of the ongoing investigation and disciplinary process -- constituted no more than a scintilla of evidence in her favor. Thus, for the same reasons as we've detailed above, Jackson failed to establish that the Agency's proffered reason for terminating her employment was a pretext for retaliation or discrimination. Accordingly, the district court did not err in granting summary judgment to the Agency on Jackson's retaliation claim.

**AFFIRMED**.