DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MATHIEU FRANCOIS,**
Appellant,

v.

**JFK MEDICAL CENTER LIMITED PARTNERSHIP,**
Appellee.

No. 4D22-1627

[August 30, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Richard Oftedal, Judge; L.T. Case No. 502021CA002682AB.

Chad Levy of Law Offices of Levy & Levy, P.A., Sunrise, for appellant.

Alexander D. del Russo and Dean A. Morande of Carlton Fields, P.A., West Palm Beach, for appellee.

FORST, J.

Appellant Mathieu Francois ("Francois") appeals the trial court's grant of summary judgment for appellee JFK Medical Center Limited Partnership ("JFK Medical") on Francois's section 440.205, Florida Statutes (2020), workers' compensation retaliation claim. JFK Medical maintains that it terminated Francois's employment due to his excessive use of force against a patient. Francois claimed that he was actually fired for his workers' compensation claim, arguing that JFK Medical's decision-makers were using the excessive force contention as a pretext for retaliation.

Francois argues on appeal that the trial court erred when it granted JFK Medical's motion for summary judgment by relying on the business judgment rule to find that Francois was quarreling with the logic of JFK Medical's decision to fire him. We agree with the trial court and affirm.

## Background

Francois was a mental health technician employed by JFK Medical, an acute care hospital in south Florida. He was assigned to the Behavioral

Health Unit, which provides care for patients with mental or emotional health needs. Francois was also an instructor for JFK Medical's crisis prevention intervention ("CPI") course. CPI is a de-escalation technique which JFK Medical's staff uses to protect patients and staff, and its proper usage is part of their policies. CPI stresses that it is never appropriate to strike a patient.

On the morning of September 1, 2020, Francois was involved in two altercations. First, in the morning he was involved in an altercation with a patient who had attacked a nurse. Francois intervened and sprained his left wrist. Francois was familiar with JFK Medical's procedures for workplace injuries and had been encouraged to report previous injuries. However, it is not clear whether he complied with these procedures or informed his supervisors about this injury.

Second, later that day, Francois was involved in another incident that was precipitated by a different patient attacking a nurse. During the ensuing scuffle, Francois and another nurse took the patient to the ground, where Francois managed to get on top of the patient. Several hospital staff who witnessed the altercation claimed they saw Francois strike the patient. Francois denied these claims.

The security director reviewed security footage of the incident and alerted the emergency services director that he suspected Francois had used excessive force.[1] The security director was not involved in the decision to terminate Francois. The emergency services director then reviewed the video and concluded that Francois had struck the patient's head at least once. She was also not involved in the termination decision.

Soon thereafter, the chief nursing officer ("the CNO"), the behavioral health services director ("the BHSD"), and the vice president of human resources ("the VPHR") investigated the incident.

When the VPHR viewed the video, she saw Francois, while sitting atop the patient, draw his hand back in a striking motion—although she didn't precisely see the patient being struck. She stated that Francois's injury didn't factor into her recommendation to terminate him.

The BHSD also watched the video and testified that she saw Francois strike the patient in the head two or three times. After seeing the video, she recommended that Francois be terminated for excessive use of force. She testified that she considered how Francois's injury impacted his ability

---

[1] The security footage is not in the record.

to use CPI, but his excessive use of force was the only motivating factor in her decision.

The CNO also concluded that Francois had struck a patient after seeing the video. Based on her investigation and the recommendations from the VPHR and the BHSD, she made the ultimate decision to terminate. Although she could not remember if the video showed Francois actually striking the patient, she recalled making the decision to terminate him because she "honestly believed" he had used excessive force against a patient.

Francois was terminated with no mention of his injury or of a potential or actual workers' compensation claim. Francois then sued, alleging he was fired in retaliation for his work-related injury under section 440.205, Florida Statutes (2020). JFK Medical moved for summary judgment, arguing the business judgment rule precluded Francois from challenging the wisdom of his termination and Francois had not presented any evidence that his firing was related to workers' compensation. The trial court agreed and granted JFK Medical's motion for summary judgment. This timely appeal followed.

**Analysis**

On appeal, Francois argues the trial court erred by applying the business judgment rule. Specifically, he argues that this Court did not apply the business judgment rule in another section 440.205 case, *Salus v. Island Hospitality Florida Management, Inc.*, 289 So. 3d 926 (Fla. 4th DCA 2020). Instead, Francois argues that the dispute over whether he actually used excessive force is sufficient to create a genuine dispute of material fact, thus precluding summary judgment. Our review is *de novo. Blew v. Blew,* 358 So. 3d 1232, 1234 (Fla. 4th DCA 2023).

Workers' compensation cases do not receive any special treatment under the amended summary judgment standard.[2] Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P.

---

[2] Francois relies on past decisions from our sister district courts as well as the Eleventh Circuit for the proposition that workers' compensation retaliation cases are ill-suited for summary judgment. However, the Eleventh Circuit, sitting en banc, has already rejected this argument, holding that "trial courts should not treat [employment] discrimination differently from other ultimate questions of fact." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024–26 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000)).

1.510(a).  "[T]he correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lloyd S. Meisels, P.A. v. Dobrofsky*, 341 So. 3d 1131, 1134 (Fla. 4th DCA 2022) (quoting *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 75 (Fla. 2021) (*Amends. to Rule 1.510*)).  Here, Francois has the ultimate burden of persuasion as the plaintiff in a workers' compensation retaliation claim.  *Ortega v. Eng'g Sys. Tech., Inc.*, 30 So. 3d 525, 529–30 (Fla. 3d DCA 2010); *Amends. to Rule 1.510*, 317 So. 3d at 77.

### 1. Workers' Compensation Retaliation Claims

Section 440.205, Florida Statutes (2020), creates a cause of action against an employer who fires an employee because they sought workers' compensation.[3]  To prevail on a pretext claim, an employee must prove three elements.  *See Salus*, 289 So. 3d at 929–30; *Ortega*, 30 So. 3d at 528–29.  Here, the parties only dispute the third element: whether Francois has shown that JFK Medical falsely contended Francois was terminated due to using excessive force as a pretext to actually fire him for his workers' compensation claim.  *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020).

Because Francois presented no such direct evidence in this case, as he concedes, he must show pretext indirectly by demonstrating the employer's proffered reason is unworthy of credence.  *See City of Hollywood v. Hogan*, 986 So. 2d 634, 642 (Fla. 4th DCA 2008).  The plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (quoting *Gogel*, 967 F.3d at 1136).

To be persuasive, any inconsistencies in the employer's proffered reasons need to have a connection to the retaliation claim.  *See, e.g., Matthews v. City of Mobile*, 702 F. App'x 960, 967–68 (11th Cir. 2017) (no evidence decision-makers knew of protected activity meant insufficient evidence of pretext); *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) ("[A] reason is not pretext for [retaliation] 'unless it is shown *both* that the reason was false, *and* that [retaliation]

---

[3] Section 440.205 states: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."  § 440.205, Fla. Stat. (2020).

4

was the real reason.'" (quoting *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006))). An employee may be fired for erroneous facts, or for no reason at all, so long as they were not fired for retaliation. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000); *see Pericich v. Climatrol, Inc.*, 523 So. 2d 684, 685 (Fla. 3d DCA 1988) ("[S]ection 440.205 only prohibits the retaliatory discharge of an employee 'by reason of' the filing of a workers' compensation claim.").

### 2. The Business Judgment Rule

The Eleventh Circuit has adopted the business judgment rule in workers' compensation retaliation claims. This rule prohibits courts from second-guessing the business judgment of employers, making the only relevant inquiry "whether the employer in good faith believed that the employee had engaged in the conduct that led the employer to discipline the employee." *Gogel*, 967 F.3d at 1148. Thus, a plaintiff must show that an employer's decision-makers did not honestly believe the employer's stated legitimate reason:

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

*Chapman*, 229 F.3d at 1030; *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1541–43 (11th Cir. 1997) ("[P]otential disagreement does not, without more, create a basis to *disbelieve* an employer's explanation . . . .").

No case from this Court has explicitly applied the business judgment rule to an employee's discrimination or retaliation claim, although several of our decisions implicitly accept it. *E.g., Sch. Bd. of Palm Beach Cnty. v. Groover*, 337 So. 3d 799, 805 (Fla. 4th DCA 2022) ("If 'the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.'" (quoting *Chapman*, 229 F.3d at 1030) (emphasis omitted)); *Hogan*, 986 So. 2d at 645 ("[C]ourts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991))); *see also Washington v. Fla. Dep't of Revenue*,

5

337 So. 3d 502, 514 (Fla. 1st DCA 2022); *Sunbeam Television Corp. v. Mitzel*, 83 So. 3d 865, 872 (Fla. 3d DCA 2012).

In *Salus*, we addressed a workers' compensation retaliation claim, but did not mention the business judgment rule. 289 So. 3d at 928. There, the employee sustained a workplace injury and was fired two weeks later. *Id.* The parties' depositions set forth conflicting reasons for termination, and the employer argued that the employee had been fired for threatening a coworker. *Id.* However, the employee denied threatening a coworker, claiming the employer was lying about the incident. *Id.*

We found that because the employee's deposition directly contradicted the employer's claims by denying he threatened a coworker, this was sufficient to preclude summary judgment. *Id.* at 930.

*Salus* does not represent a rejection of the business judgment rule. The employee's theory was that the employer had fabricated an event to justify firing its employee, which is a valid way of showing pretext. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). If the employer was lying and had made up a reason to fire the employee, this could show the employer did not have a good faith belief in its explanation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (a reasonable inference of pretext may arise from an employer's falsehoods, which might imply the employer is dissembling to cover up a discriminatory purpose).

However, *Salus* applied the old summary judgment standard. The only evidence tending to show that the employer was lying about the incident was the employee's own testimony. *Salus*, 289 So. 3d at 928. Under the new standard, a unilateral claim from the plaintiff that the defendant is lying, standing alone, is not enough to avert summary judgment. *See Amends. to Rule 1.510*, 317 So. 3d at 76.

Thus, even though *Salus* did not mention the business judgment rule, *Salus* did not reject that rule. And we can find no persuasive reason not to apply the business judgment rule given its implicit acceptance in our previous decisions and its prevalence in the Eleventh Circuit. Therefore, the business judgment rule applies to workers' compensation retaliation claims under section 440.205.

### 3. Francois's Workers' Compensation Retaliation Claim

The Eleventh Circuit's decision in *Jackson v. Agency for Persons with Disabilities Florida*, 608 F. App'x 740 (11th Cir. 2015), is instructive.

6

There, the Eleventh Circuit rejected a similar section 440.205 retaliation claim.

The employee in *Jackson* claimed she was fired for an eye condition that entitled her to workers' compensation benefits. *Id.* at 741. Based on reviewing a video and a report from a third party, the employer's decision-makers concluded that the employee violated a rule and should be fired. *Id.* at 743. The Eleventh Circuit found that the employee had failed to allege a material fact regarding pretext: "[U]nder our law, the [employer] only needed to believe that [the employee] behaved inappropriately, even if the [employer] misinterpreted the [third party's] Report or exhibited a lack of concern about its accuracy." *Id.*

Moreover, the court also noted that a decision-maker having doubts is not enough for pretext. Specifically, the employee pointed to a statement from one decision-maker, made immediately after the incident, where that decision-maker indicated she had thought the employee had done no wrong. *Id.* That statement was enough to defeat any alleged claim of pretext that "after attending a management committee meeting and reviewing the [third party's report], the video of the incident, and [the employee's] disciplinary history, [that decision-maker] concluded that Jackson had in fact acted inappropriately during the incident." *Id.*

The court concluded by noting that the only evidence tending to show retaliation was a temporal connection between the protected activity and the employee's termination, which was "no more than a scintilla of evidence" in the employee's favor. *Id.* at 744. "In short, [the employee] simply has failed to present any genuine dispute of fact about whether the [employer] honestly believed that she acted inappropriately." *Id.* at 743.

Like in *Jackson*, Francois has failed to present any evidence that JFK Medical's decision-makers did not honestly believe that Francois had struck a patient. *See Alvarez*, 610 F.3d at 1266 (pretext "centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head"). Any differences in the witnesses' recollection of what the video showed were inconsequential; the witnesses testified that they at least saw Francois cock his fist back when he was on top of the patient.

The business judgment rule limits our inquiry to whether any evidence showed JFK Medical's decision-makers did not honestly believe that Francois had used excessive force. We cannot question whether it was reasonable to fire Francois based on the video or whether a reasonable employer would have conducted a different investigation. What remains

7

is that the only connection between workers' compensation and Francois's termination is a temporal one, which is insufficient. *See Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1218 (11th Cir. 2021) ("[T]he dispute about whether that underlying conduct occurred is not enough for [the employee] to carry her burden for the pretext inquiry."). JFK Medical was therefore entitled to summary judgment.

## Conclusion

The business judgment rule applies in workers' compensation retaliation cases. Applying that rule here, the trial court properly granted summary judgment in favor of JFK Medical. Francois has failed to meet his burden of producing evidence showing a genuine dispute of a material fact. We therefore affirm.

*Affirmed.*

KLINGENSMITH, C.J., and ARTAU, J., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***