SHEPHERD, J.
 

 Ricardo Ortega appeals a summary final judgment rendered against him in an action where he claims Engineering Systems Technology, Inc., unlawfully discharged him in retaliation for making a valid workers’ compensation claim.
 
 See
 
 § 440.205, Fla. Stat. (2007).
 
 [1]
 
 Engineering Systems
 
 *527
 
 defends the summary final judgment on the ground that the failure of the employer’s workers’ compensation carrier to unequivocally advise it that Ortega was released to work constitutes a complete bar to Ortega’s claim. We disagree and therefore reverse and remand this case for further proceedings. A brief summary of the facts of this case, set forth in the light most favorable to the non-movant, as the law requires at this stage of the proceeding, is necessary to explain our decision.
 

 FACTS
 

 Engineering Systems is engaged in the business of installing fire protection devices, such as fire alarms and sprinklers. A typical installation crew consists of an “installer” and a “helper.” Engineering Systems employed Ortega as a “helper.” On October 31, 2006, Ortega fell off a ladder during the course of a job site installation and fractured his right wrist. Enrique Borja, Ortega’s boss and the owner of Engineering Systems, provided immediate notification of the accident to his workers’ compensation insurance carrier, Associated Industries Technology Insurance Company, which assumed responsibility for managing Ortega’s care and benefits.
 

 Dr. Donald Caress first saw Ortega for his injury on November 2, 2006. Caress noted his activity status as “No use of right arm,” “Must wear splint,” and recommended Ortega see a hand surgeon as soon as possible. On November 7, Dr. Franklin A. Reyes, a hand specialist, examined Ortega, confirmed his right wrist fracture, and recommended surgery. Ortega had surgery on November 8. He visited Dr. Reyes again on November 9, November 14, December 5, and December 21. The record reflects most of these visits were for therapy. Through this entire time period, Ortega was on a “no work” status.
 

 On February 1, 2007, Dr. Reyes examined Ortega and, for the first time, authorized Ortega to engage in the “limited use of [his] injured hand” with a twenty pound weight restriction. On the same day, Ortega called Borja, hoping to return to work. Borja advised Ortega he did not have any light-duty jobs available for him and stated “he should go back to his workman’s compensation and make sure they ... do what they have to do ... to make sure he can work [without any limitations].” Referring specifically to whether he would take Ortega back when he was sufficiently recovered, Borja stated, “I don’t have a problem ... [a]nybody can work.” On February 9, 2007, Carol Cooper, the Associated Industry’s adjustor assigned to Ortega’s case, completed the Division of Workers’ Compensation Form DWC-4, indicating February 1, 2007 as Ortega’s “RELEASED TO RETURN TO WORK DATE,” with restrictions. A copy of the DWC-4 form was furnished to Engineering Systems and filed with the Florida Department of Workers’ Compensation, as required by law under Florida Administrative Rule 69L-3.0091. Through a conversation with Tonya Borja, Enrique Borja’s office manager and wife, Cooper also confirmed the company did not have any work available for an individual with Ortega’s limitation.
 

 After further treatment and therapy under the care and supervision of Dr. Reyes, Dr. Reyes, on April 12, 2007, issued a report to Associated Industries, stating Ortega reached maximum medical improvement and “he can return to work with no limitations.” A copy of this report was supplied to Ortega, who in turn faxed it to Engineering Systems. Twelve days later, on April 24, 2007, Dr. Reyes furnished Associated Industries with the Division of Workers’ Compensation Form DWC-25, indicating Dr. Reyes assigned Ortega a permanency rating of five per
 
 *528
 
 cent of the body as a whole, and confirming again Ortega was released from all work limitations. Upon receipt of this form, Cooper prepared a second DWC-4 form on April 24, 2007, reciting Ortega had reached maximum medical improvement as of April 12, 2007, but left blank, both the “RELEASED TO RETURN TO WORK DATE” field, and the work restrictions field. As Cooper explained in her deposition, it was not her carrier’s practice to fill-in these fields when an employee was released to full duty because the worker must advise the employer if he wishes to return to work.
 
 [2]
 
 Borja was furnished a copy of the Division of Workers’ Compensation Form DWC-4, but not the Division of Workers’ Compensation Form DWC-25.
 

 Four days after Dr. Reyes informed Ortega he could return to work with no limitations, Ortega had a conversation with Borja, during which Ortega testified he told Borja he was ready to return to work and had been cleared of all limitations. According to Ortega, Borja replied, “I don’t have work for you ... I removed you from my staff two months ago.” Although Ortega’s telephone records reflect three calls to the Engineering Systems office— one six minutes in length — on the date Ortega stated he had this conversation with Borja, Borja denied having this or any other conversation with Ortega during the year 2007. Rather, Borja testified Ortega never contacted him or told him he had been fully cleared to return to work or wanted to work. Moreover, he testified he was without obligation to put Ortega back to work until he received a properly completed Division of Workers’ Compensation Form DWC-4, stating he was cleared to work without limitations. Borja denied ever receiving the second of the two DWC-4 forms furnished to him by Cooper, and could not recall receiving the report issued by Dr. Reyes on April 12, 2007. Both forms were found in his files.
 

 ANALYSIS
 

 In order to prevail on a retaliatory discharge claim under section 440.205 of the Florida Workers’ Compensation Laws, Chapter 440 of the Florida Statutes, the employee must prove: (1) he engaged in a statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action was causally related to the employee’s protected activity.
 
 Russell v. KSL Hotel Corp.,
 
 887 So.2d 372, 379 (Fla. 3d DCA 2004). The parties do not dispute Ortega engaged in statutorily protected activity by filing a workers’ compensation claim, but this is where any agreement ends.
 

 As to the second element, Ortega contends there is a genuine issue of material fact as to whether he suffered an adverse employment action. Engineering Systems argues nobody told Ortega he was fired or that he could not return to work. To the contrary, Ortega testified he spoke with Borja on April 16, 2007, four days after he was released to work without restrictions. Phone records support Ortega’s assertion. Ortega testified that during the conversation, Ortega told Borja he was released and ready to return to work, but Borja replied he “did not have work for Ortega” and had “removed him from the staff’ two months earlier, in February. Of course, this statement is contradicted by the statement, also made in February 2007, that Borja “[did not] have any problem taking Ortega back to work when he was fully recovered.” Furthermore, Ortega presented evidence contradicting Engineering Systems’ claim it did not have any available work. Engineering Systems contends Ortega was not terminated and, in fact, never told he was “fired.” While Ortega
 
 *529
 
 may not have been fired “en haec verba,” there is sufficient evidence in the record from which a jury could conclude the second prong has been satisfied.
 

 As to the third element, a plaintiff must prove causation by showing the protected activity and the adverse action are not completely unrelated.
 
 See Higdon v. Jackson,
 
 393 F.3d 1211, 1220 (11th Cir. 2004). In our case, there is evidence to support a jury finding of a temporal relation between the protected activity and the adverse employment action.
 
 See Id.
 
 (“A ‘close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case.”). The protected activity — the pursuit of workers’ compensation benefits — began in November 2007. Evidence in the record indicates Ortega was removed from Engineering Systems’ work staff sometime in February 2007, after having been told on the first day of that month Engineering Systems would take him back when he was free from all work limitations. At the same time, Borja testified he has not terminated any employees through the date of his deposition. On these facts, we cannot conclude there is a complete absence of any genuine issue of material fact concerning, not only whether Engineering Systems engaged in an adverse employment action, but also whether there was a causal relationship between such action and Ortega’s pursuit of his workers’ compensation care and benefits.
 

 Once a plaintiff establishes a prima facie case by proving the protected activity and the negative employment action are not completely unrelated, the burden then shifts to the employer to proffer a legitimate reason for the adverse employment action.
 
 See Russell,
 
 887 So.2d at 379-80. In this case, Engineering Systems proffers, as its legitimate reason for its action, that Ortega never came forward asking to be returned to duty and, in any event, Ortega was not formally released to duty by the employer’s workers’ compensation carrier.
 

 A plaintiff withstands summary adjudication at this stage either by producing sufficient evidence to permit a reasonable finder of fact to conclude the employer’s proffered reasons were not what actually motivated its conduct, or that the proffered reasons are not worthy of belief.
 
 Corbitt v. Home Depot U.S.A.,
 
 589 F.3d 1136, 1162-63 (11th Cir. 2009). A trial court should “evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoheren-cies, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.”
 
 Id.
 
 (internal citations omitted). In our case, there is a clear conflict in the record concerning whether Ortega ever approached his employer after he achieved full recovery and asked to return to work. Moreover, we find no authority, and the employer has provided us with none, to support the employer’s fail-safe defense that the failure of a workers’ compensation carrier to provide an employer with a Division of Workers’ Compensation Form DWC-4, unequivocally advising the employer that Ortega was released to work, provides a complete defense to a retaliation claim under section 440.205 of the Florida Statutes.
 

 We underscore that in reaching our decision on review of an order granting summary judgment, we are required to review the record de novo and construe all facts in a fashion most favorable to the non-mov-ant.
 
 See Interested Underwriters v. SeaFreight Line, Ltd.,
 
 971 So.2d 892, 894 (Fla. 3d DCA 2008). Ultimately, the plaintiff bears the burden of proof that a violation of the statute occurred and that such violation was a substantial factor in the
 
 *530
 
 employer’s decision in this case.
 
 See Rus
 
 sell, 887 So.2d at 379-80.
 

 Reversed and remanded for further proceedings.
 

 [1]
 

 . The statute reads: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.”
 

 [2]
 

 . This practice is contrary to Florida Administrative Rule 69L-3.0091 (2007).