WALLACE, Judge.
Philip Hornfíscher challenges a final summary judgment entered in favor of his former employer, the Manatee County Sheriffs Office (the MCSO), on Mr. Horn-fischer’s claim for retaliatory discharge under section 440.205, Florida Statutes (2006). Because the MCSO failed to establish the nonexistence of a genuine issue of material fact concerning whether its discharge of Mr. Hornfischer and his filing of workers’ compensation claims were causally related, we reverse the final summary judgment and remand for further proceedings.
I. THE FACTS AND PROCEDURAL HISTORY
In 2000, Mr. Hornfischer was employed by the MCSO as a meat cutter.[1] On November 13, 2006, Mr. Hornfischer was involved in a compensable accident when he accidentally stabbed himself in the abdomen with a knife. A “First Report of Injury or Illness” was timely filed for this accident.
The report lists the employer name as “Manatee County Government, D.B.A.-OÍ-fice of the County Attorney.” The MCSO was self-insured for workers’ compensation purposes. The MCSO participated in a pool of funds for workers’ compensation cases run by Manatee County. A third-party administrator, Unisource Administrators, Inc., administered the pool.
After Mr. Hornfischer underwent testing following the stabbing incident, physicians determined that he had medical problems with his hands and arms unrelated to the stabbing. The workers’ compensation liaison in the MCSO’s human resources department told Mr. Hornfischer to file another claim for the hand and arm problems, and he did. A second “First Report of Injury or Illness” was filed on November 30, 2006, with a date of accident listed as November 28, 2006. The MCSO paid medical expenses and other benefits based on Mr. Hornfiseher’s claims.
The course of Mr. Hornfischer’s treatment and recovery was extended and marked by various difficulties. Ultimately, he was unable to return to work as a meat cutter. The MCSO offered him a different position as a control room operator in the jail. Mr. Hornfischer reported for work in the new position, but, for reasons discussed later in this opinion, he did not assume his new duties. After an administrative hearing, the MCSO notified Mr. Hornfischer that his employment was terminated on May 24, 2007.
In October 2010, Mr. Hornfischer filed an action against the MCSO for retaliatory discharge under section 440.205. The MCSO answered the complaint and alleged that “[Mr. Hornfiseher’s] termination would have occurred in any event, regardless of his request for workers’ compensation benefits.” After the parties had conducted discovery, the MCSO moved for summary judgment on the ground that “[t]here is no genuine issue of material fact to support a causal connection between [the] protected activity and the adverse employment action concerning [Mr. Horn-fischer’s] termination.” The circuit court granted the motion and entered a final *706 judgment in favor of the MCSO. This appeal followed.
II. THE STANDARD OF REVIEW
The standard of review for an order granting a motion for summary judgment is de novo and requires a two-pronged analysis. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, Huntington Nat’l Bank v. Merrill Lynch Credit Corp., 779 So.2d 396, 398 (Fla. 2d DCA 2000), and (2) the moving party is entitled to a judgment as a matter of law, Aberdeen at Ormond Beach, 760 So.2d at 130. “If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.” Holland v. Verheul, 583 So.2d 788, 789 (Fla. 2d DCA 1991).
III. THE APPLICABLE LAW
Mr. Hornfischer’s claim against the MCSO is based on an alleged violation of section 440.205. The statute provides as follows:
No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee’s valid claim for compensation or attempt to claim compensation under the Workers’ Compensation Law.
A claim under the statute has three elements: (1) the employee engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action and the employee’s protected activity were causally related. Ortega v. Eng’g Sys. Tech., Inc., 30 So.3d 525, 528 (Fla. 3d DCA 2010) (citing Russell v. KSL
Hotel Corp., 887 So.2d 372, 379 (Fla. 3d DCA 2004)). In order to establish a claim under section 440.205, the employee’s pursuit of workers’ compensation need not be the only reason for a discharge. Allan v. SWF Gulf Coast, Inc., 535 So.2d 638, 639 (Fla. 1st DCA 1988). “The statute prohibits any discharge ‘by reason of an attempt to claim compensation even if there may also be other reasons for the discharge.” Id. In addition, proof of a discharge is not essential to a recovery under the statute. Section 440.205 creates a cause of action for intimidation or coercion even in the absence of a discharge. Chase v. Walgreen Co., 750 So.2d 93, 97-98 (Fla. 5th DCA 1999). Finally, the employee need not establish a specific retaliatory intent in order to prevail. Allan, 535 So.2d at 639.
In considering employee claims for retaliatory discharge under 440.205, courts use the following framework:
Once a plaintiff establishes a prima facie case by proving the protected activity and the negative employment action are not completely unrelated, the burden then shifts to the employer to proffer a legitimate reason for the adverse employment action. See Russell [v. KSL Hotel Corp.], 887 So.2d [372], 379-80 [Fla. 3d DCA 2004]....
A plaintiff withstands summary adjudication at this stage either by producing sufficient evidence to permit a reasonable finder of fact to conclude the employer’s proffered reasons were not what actually motivated its conduct, or that the proffered reasons are not worthy of belief. Corbitt v. Home Depot U.S.A., 589 F.3d 1136, 1162-63 (11th Cir.2009). A trial court should “evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer’s proffered legitimate reasons for its action *707 that a reasonable factfinder could find them unworthy of credence.” Id. (internal citations omitted).
Ortega, 30 So.3d at 529.
IV. THE TRIAL COURT’S ANALYSIS
In this case, the trial court summarized its reasons for granting final summary judgment in favor of the MCSO as follows:
V. In the case at bar[,] the Court finds Plaintiff has established elements one and two of a prima facie case. However, the Court also finds Plaintiff has been unable to present any record evidence as to a causal connection between his exercise of protected activity and the adverse employment action by Defendant. In fact, the undisputed evidence has established his workers’ compensation benefits were paid and the adverse job action/termination was remote temporally from same. Even assuming that the second filing on 28 November 2006 was the protected activity it too is approximately six months removed from the adverse job action/termination of 22 May 2007.
W. Even if it could be argued Plaintiff had established all three elements for a prima facie case shifting the burden to Defendant; Defendant has provided at least two legitimate, nondiscriminatory policy reasons for the 22 May 2007 termination. Those two legitimate, nondiscriminatory reasons were insubordination and neglect of job. As a result Plaintiff must establish via record evidence that both legitimate, nondiscriminatory reasons were merely a pretext for Defendant’s retaliatory conduct. The Court finds Plaintiff has fallen woefully short of establishing that even one of the reasons for termination was pre-textual, let alone both.
On this basis, the trial court concluded that the MCSO had established the nonexistence of a genuine issue of material fact and that it was entitled to a judgment as a matter of law.
V. DISCUSSION

A. Introduction

After a thorough review of the record, we disagree with the trial court’s analysis, The record contains evidence from which one might conclude that the MCSO’s stated reasons for discharging Mr. Horn-fischer will not withstand critical scrutiny and that the reasons are pretextual. This evidence in the record includes: (1) information indicating that the MCSO’s stated reasons for discharging Mr. Hornfischer are questionable; (2) e-mails and other documents circulated among the MCSO’s agents reflecting the negative attitude that they displayed toward Mr. Hornfischer and his claims; and (3) the affidavits that Mr. Hornfischer filed in opposition to the motion for summary judgment. We will discuss these three types of evidence separately below.

B. The Questionable Reasons Given for Mr. Hornfischer’s Discharge

The MCSO offered two reasons in support of its determination to discharge Mr. Hornfischer. Both of these reasons are subject to question.
The first reason the MCSO offered for Mr. Hornfischer’s discharge was his alleged failure to obtain a report from his authorized treating physician concerning his medical condition and fitness to return to work as a control room operator. According to the MCSO, Mr. Hornfischer’s alleged failure to obtain this report amounted to neglect of duty warranting his discharge. There are two problems with the neglect of duty charge.
*708 The first problem with the neglect of duty charge stems from the legal conclusion that obtaining the physician’s report was the responsibility of the MCSO, not Mr. Hornfiseher. The workers’ compensation system is designed to be self-executing, and it is in “its day-to-day operations, fundamentally an employer/earrier-monitored system.” Gauthier v. Fla. Int'l Univ., 38 So.3d 221, 224 (Fla. 1st DCA 2010). In order to ensure that the system functions efficiently as intended, “[a]ny health care provider providing necessary remedial treatment, care, or attendance to any injured worker” is required to submit reports to the employer/carrier. § 440.13(4)(a), (c). For these reasons, the employer cannot pass off its responsibilities under the Workers’ Compensation Law to the injured worker and require him or her to act as its go-between to a health care provider. Here, the MCSO discharged Mr. Hornfiseher for allegedly failing to perform a function that it could not lawfully demand of him.
The second problem with the neglect of duty charge is that the record reflects a genuine issue of material fact about whether Mr. Hornfiseher actually complied with the MCSO’s unauthorized demand. There is evidence in the record that Mr. Horn-fiseher obtained the requested report from his doctor and faxed it to his attorney. In turn, Mr. Hornfischer’s attorney evidently faxed a copy of the report to Unisource, the third-party administrator, before the deadline imposed by the MCSO for the receipt of the report. Thus evidence in the record tends to demonstrate that the requested report was actually in the hands of the claims administrator, the MCSO’s agent, within the time allotted for that purpose. In the absence of contrary evidence, the MCSO could not reasonably contend that it was not in receipt of the report that was delivered to the agent it had authorized to handle the claim.
The second reason the MCSO gave for discharging Mr. Hornfiseher was that he was absent from work without leave. Nevertheless, the evidence in the record raises a genuine issue of material fact about the reason or reasons for Mr. Horn-fischer’s absence from work. There is evidence in the record that when Mr. Horn-fiseher reported for work, he notified his supervisor that he was taking prescribed analgesics. Upon hearing this information, the supervisor instructed Mr. Horn-fiseher to leave work and to return home. Based on such evidence, a jury could reasonably conclude that Mr. Hornfiseher was not absent from work without leave.

C. A Negative Attitude

The evidence in the record before the circuit court included a series of e-mails exchanged among the MCSO’s agents— the Manatee County attorney’s office and Unisource. A jury reading these e-mails might conclude that the MCSO’s agents consistently displayed a negative attitude toward Mr. Hornfiseher and his workers’ compensation claims.[2] An adjuster in the Manatee County attorney’s office arranged for and obtained surveillance reports on Mr. Hornfiseher. When Mr. Hornfischer’s deposition in the workers’ compensation *709 claims was scheduled for May 10, 2007, the same adjuster arranged for an off-duty law enforcement officer to be present at the deposition. Ultimately, Mr. Hornfischer’s case was referred to the Florida Department of Financial Services for the investigation of alleged insurance fraud. The apparent animus displayed by the MCSO’s agents against Mr. Hornfischer and his claims constitutes evidence from which— depending upon all of the facts — it might be appropriate for a jury to draw an inference that the MCSO’s stated reasons for discharging Mr. Hornfischer were pretex-tual in nature.

D. The Opposing Affidavits

Mr. Hornfischer filed his own affidavit and the affidavit of his attorney in opposition to the motion for summary judgment. In his affidavit, Mr. Hornfischer stated, in pertinent part, as follows:
9. This was not my first workers’ compensation claim. I sustained other, earlier on-the-job injuries during my employment with the Sheriffs Office who handled those claims in accordance with the workers’ compensation law. My employer handled this claim differently. My employer knew this claim was more expensive than the others, and sought to limit the exposure it presented. In doing so, my employer ordered surveillance of my activities, accused me of insurance fraud, referred to my MRSA [Multi-Resistant Staphylococcus Aureus] infection as bug bites, repeatedly insisted that I singularly produce a report from the doctor it authorized to treat my compensable injuries, refused to communicate with my attorney or give my attorney a copy of the medical report form to enable my attorney to assist me, and discharged me after telling me that I failed to meet the deadline for producing the report. My employer required me to return to work in a temporary assignment as a control room operator on April 27, 2007, which I did, and sent me home because I was taking medications; and on that date my employer suspended my compensation benefits and did not resume the payments until I was able to see Dr. Greene.
10. Although my employer had received the medical information it demanded from me, my employer told me that it had not received the information directly from me, calling it “insubordination” and “neglect of duty”. I was not insubordinate nor did I neglect my duties. On the contrary, my employer disregarded its obligations under the workers’ compensation law and unlawfully discharged me. My employer’s unlawful actions occurred only because of my valid workers’ compensation claim and my attempt to obtain compensation under the workers’ compensation law.
Mr. Hornfischer’s attorney’s affidavit described the circumstances concerning the actions taken by him and.Mr. Hornfischer to obtain the doctor’s report and to deliver it to Unisource before the deadline imposed by the MCSO. These affidavits constitute additional evidence in the record from which a jury might conclude that the MCSO’s stated reasons for discharging Mr. Hornfischer were both unfounded and pretextual.

E. The MCSO’s Responses

The MCSO offers two responses to the evidence in the record summarized above. First, the MCSO argues that the lapse of approximately six months between Mr. Hornfischer’s claims and his discharge conclusively establishes the absence of a causal connection between the protected activity and the adverse employment action. In light of the matters outlined above concerning the questionable nature of the reasons offered for Mr. Hornfisch *710 er’s discharge, together with the e-mails reflecting a negative attitude by the MCSO’s agents toward Mr. Hornflscher and his claims, we find this argument unconvincing.
Second, the MCSO asserts that Manatee County, which ran the self-insurance pool, and Unisource, the third-party administrator of the pool, “are distinct and separate entities” from the MCSO. According to the MCSO, Mr. Hornflscher improperly attempts to “attribute the actions” of these separate entities to it. We take a different view of the matter.
In light of the other evidence he presented in opposition to the motion for summary judgment, we conclude that Mr. Hornflscher was entitled to attempt to establish at a trial that the MCSO’s managers responsible for his firing were aware of the thinking and the actions of the MCSO’s agents charged with handling Mr. Hornfischer’s workers’ compensation claims. Cf. Barlow v. C.R. England, Inc., 703 F.3d 497, 502, 508 (10th Cir.2012) (noting that the employer’s site manager, who was responsible for discharging a workers’ compensation claimant in what was alleged to be a retaliatory discharge, was aware of a third-party claims adjuster’s decision to place the claimant under surveillance and was also asked for help in responding to the adjuster’s queries concerning the claim when the site manager made the decision to discharge the claimant). A jury would be entitled to draw negative inferences about the MCSO’s motives for discharging Mr. Hornflscher from such evidence. For this reason, we find the MCSO’s argument that the acts of its agents cannot be considered in determining the propriety of summary judgment to be unpersuasive.
VI. CONCLUSION
Generally speaking, an employer does not announce or state in writing that it is discharging an employee because he or she has filed a workers’ compensation claim. It is not difficult for an employer wishing to discharge an employee for engaging in protected activity to find another plausible reason or reasons to justify its decision. Thus a determination of whether an adverse employment action was causally related to the employee’s protected activity will frequently depend on a consideration of all the pertinent facts, a searching assessment of the actions, statements, and credibility of the participants, and the drawing of appropriate inferences informed by one’s life experience and understanding of human nature. For this reason, employee actions for a retaliatory discharge under section 440.205 are often ill suited to final disposition on a motion for summary judgment.[3] This is such a case. Here, the MCSO failed to establish the nonexistence of a material fact concerning whether its discharge of Mr. Hornflscher was causally related to the filing of his worker’s compensation claims. A review of the record reveals evidence from which a jury could find that the MCSO’s stated reasons for discharging Mr. Hornflscher were pretextual. Accordingly, we reverse the final summary judg *711 ment in favor of the MCSO and remand for further proceedings.
Reversed and remanded.
DAVIS, C.J., and ALTENBERND, J„ Concur.

. The facts — which are drawn from the pleadings; the depositions on file; the affidavits; and the e-mails, correspondence, and other documents in the record — are reviewed in the light most favorable to Mr. Hornfischer as the nonmoving party against whom the summary judgment was entered. See Markowitz v. Helen Homes of Kendall Corp., 826 So.2d 256, 258-59 (Fla.2002).

. It would unduly lengthen this opinion to detail the content of all of these e-mails here. One exchange will suffice to give their tenor. On May 1, 2007, a claims adjuster in the Manatee County attorney's office sent an email to an adjuster at Unisource who had just been assigned to handle Mr. Hornfischer’s claims. The e-mail said: "You are going to get sick of this file. I received a letter from [Mr. Hornfischer’s attorney] which I am forwarding to you and attorney Dan DeMay.” The Unisource adjuster responded: "I just reviewed the file, and you are right. This man has no intentions on ever[] actually returning to work.”

. See, e.g., Rivera v. Saffold, 606 So.2d 1249, 1249 (Fla. 2d DCA 1992); Ortega, 30 So.3d at 529; Eads v. Traffic Control Devices, Inc., 19 So.3d 1142, 1143 (Fla. 1st DCA 2009); Hubbard v. City of Boca Raton, 839 So.2d 747, 748 (Fla. 4th DCA 2003), Posada v. James Cello, Inc., 135 Fed.Appx. 250, 252-53 (11th Cir.2005); Davis v. Jim Quinlan Ford, Lincoln-Mercury, Inc., 932 F.Supp. 1389, 1392-93 (M.D.Fla.1996). But see, e.g., Pericich v. Climatrol, Inc., 523 So.2d 684, 685-86 (Fla. 3d DCA 1988), Edwards v. Niles Sales & Serv., Inc., 439 F.Supp.2d 1202, 1228-37 (S.D.Fla. 2006); Humphrey v. Sears, Roebuck, & Co., 192 F.Supp.2d 1371, 1374-75 (S.D.Fla.2002).