[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14108
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-22610-KMW

ANTONIO RODRIGUEZ,

Plaintiff-Appellant,

versus

CARGO AIRPORT SERVICES USA, LLC,
d.b.a. MIA - Cargo Air Services USA
d.b.a. Cargo Services, Inc.
d.b.a. CAS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 28, 2016)

Before TJOFLAT, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Antonio Rodriguez appeals from the district court's grant of summary judgment in favor of his former employer, Defendant-Appellee Cargo Airport Services USA, LLC ("CAS"), in his lawsuit alleging that CAS terminated him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act ("FCRA"), and retaliated against him for exercising his rights under the Florida Workers' Compensation Law. Rodriguez argues that the district court misapplied the summary-judgment framework and that material issues of fact preclude summary judgment on all of his claims. After careful review, we affirm.

## I.

CAS is a cargo-handling company that provides services at airports in Florida and elsewhere. Alex Gonzalez, the General Manager of two CAS warehouse facilities at the Miami International Airport, hired Rodriguez on September 30, 2013, as a High Value Security Guard for one of the warehouses, Building 707A. Building 707A housed high-value cargo for a customer airline. Rodriguez was 61 years old when hired.

On April 12, 2014, Rodriguez was physically attacked at work by a co-worker, Juan Perez, who pushed Rodriguez to the floor and hit him several times. Rodriguez did not fight back. Two other employees separated Perez and Rodriguez.

2

After the fight, Gonzalez interviewed Perez and Rodriguez independently. Rodriguez provided Gonzalez a written statement claiming no knowledge of Perez or why he attacked. According to Gonzalez, Perez stated that Rodriguez had provoked him by verbally harassing him and calling him a "maricon," a slur in Spanish for a homosexual man. After meeting with Perez and Rodriguez, Gonzalez immediately terminated Perez's employment.[1]

Two days after the attack, Rodriguez went to the doctor and made a claim for workers' compensation benefits. Rodriguez was on leave for two weeks and was cleared to return to work on April 28, 2014.

In the meantime, Gonzalez continued to investigate Rodriguez's role in the altercation. Gonzalez testified that he reviewed video footage (without audio) of the incident and interviewed numerous other employees. No employees witnessed what happened before the fight. Nonetheless, a "Manager on Duty" sent Gonzalez an e–mail stating that he spoke with Perez after the fight, and Perez stated that he attacked Rodriguez because Rodriguez had been calling him a "maricon" and had made negative comments about his wife. The manager also referenced an incident in March 2014, when Rodriguez and another employee had argued.

---

[1] Rodriguez disputes whether Perez was, in fact, terminated. He relies on deposition testimony from Perez that after the fight on April 12, Gonzalez did not directly tell him he was terminated. However, Perez did not return to work after April 12, and other documents in the record, such as a disciplinary report and a separation notice, make clear that Gonzalez terminated Perez on April 12 for fighting, even if he did not tell Perez so at the time. No genuine factual dispute exists about this issue.

After consulting with the Regional Manager, Shawnpaul Booth, Gonzalez made the decision to terminate Rodriguez's employment for being involved in the altercation. Gonzalez testified that he made the decision to terminate Rodriguez about a week before Rodriguez returned to work from leave on April 28 or 29. Gonzalez informed Rodriguez of his termination when he returned. The disciplinary report provided to Rodriguez stated,

> It appeared that [Rodriguez] said something to [Perez] as he was walking by that angered him. [Perez] pushed [Rodriguez], who fell to the ground. [Perez] mounted on top of him and struck him several times. [Rodriguez] did not fight back. He simply grabbed (hugged) onto [Perez] until [two other employees] separated the two of them.

Rodriguez was 61 years old when terminated.

CAS's Employee Handbook contains policies and procedures related to employee conduct. Section 303(B) provides, in relevant part, that fighting on work premises or "using threatening or abusive language" may be cause for immediate termination. Section 305 outlines a generally applicable progressive disciplinary policy.

After his termination, Rodriguez filed this lawsuit alleging that he was terminated because of his age and retaliated against for having filed for workers' compensation benefits. The district court granted summary judgment to CAS, and Rodriguez timely brought this appeal.

4

## II.

We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of Rodriguez, the non-moving party. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1307 (11th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

## III.

Both the ADEA and the FCRA prohibit age discrimination in employment. 29 U.S.C. § 623(a)(1); Fla. Stat. Ann. § 760.10(1)(a). We analyze both claims jointly under the framework used to decide ADEA actions. *See Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 n. 2 (11th Cir. 1997) ("Age discrimination claims brought under the Florida Civil Rights Act have been considered within the same framework used to decide actions brought pursuant to the ADEA."). To prevail on an ADEA claim, the plaintiff must prove by a preponderance of the evidence that the employer's adverse decision would not

5

have occurred "but for" the plaintiff's age. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352 (2009).

When the plaintiff supports his claim with circumstantial evidence, we apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). *Kragor*, 702 F.3d at 1308. Under this framework, the plaintiff must first establish a *prima facie* case of age discrimination, which creates a rebuttal presumption that the employer acted illegally. *Id.* The parties agree that Rodriguez established his *prima facie* case. Once a *prima facie* case is established, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action." *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014) (internal quotation marks omitted).

If the employer meets its burden of producing a legitimate reason for its action, "the presumption of discrimination is eliminated," and the plaintiff then has the opportunity to show that the "reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48, 120 S. Ct. 2097, 2108-09 (2000). The plaintiff's burden of showing that the employer's reason is pretextual "merges with the

plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against [him]." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman,* 229 F.3d at 1024-25.

In evaluating evidence of pretext, we do not sit as a super-personnel department judging the wisdom, fairness, or accuracy of the employer's decision. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Rather, "our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* (internal quotation marks omitted); *see Alvarez*, 610 F.3d at 1266 ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs . . . ."). Therefore, in attempting to show pretext, a plaintiff must meet the employer's reason "head on and rebut it"; he cannot simply recast the employer's reason, substitute his business judgment for that of the employer, or otherwise quarrel with the wisdom of the decision. *Alvarez*, 610 F.3d at 1265.

Initially, Rodriguez maintains that this circuit's jurisprudence—*Chapman* in particular—applying the *McDonnell-Douglas* framework at summary judgment effectively treats discrimination cases differently than other cases. *Cf. Chapman*, 229 F.3d at 1026 ("The long and short of it is that the summary judgment rule

7

applies in job discrimination cases just as in other cases."). Specifically, Rodriguez contends that an employer in this circuit satisfies its burden under the *McDonnell-Douglas* framework, and may be entitled to summary judgment, when it merely "raises a genuine issue of fact as to whether it discriminated against the plaintiff," *see id.* at 1024 (quotation omitted), which, Rodriguez asserts, is inconsistent with the movant's general summary-judgment burden to show the absence of a genuine dispute of material fact, *see* Fed. R. Civ. P. 56(a). We do not reach the question of whether there is any inconsistency between these respective burdens because we, like the district court, are bound by prior precedent, *Smith v. GTE Corp.*, 236 F.3d 1292, 1302-03 (11th Cir. 2001), and Rodriguez makes no direct claim that CAS failed to meet its summary-judgment burden in this case.

Turning to the merits, Rodriguez first asserts that CAS did not offer a legitimate, non-discriminatory reason for terminating him. We disagree. A legitimate reason is "one that might motivate a reasonable employer." *Chapman*, 229 F.3d at 1030. The employer's explanation of its reasons must be "clear and reasonably specific so that the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Id.* at 1034 (internal quotation marks omitted).

Here, CAS explained that it fired Rodriguez because he was involved in a fight on work premises and it was unable to determine that he was not responsible for inciting the fight. Fighting with or using abusive language towards another

8

employee on work premises in violation of company policy plainly qualifies as a legitimate, non-discriminatory reason for terminating an employee. And given Rodriguez's involvement in the altercation, Perez's explanation that he attacked Rodriguez in retaliation for his harassing comments, and the unlikelihood that an employee would attack another employee without provocation, a reasonable employer could have concluded that, in the absence of some evidence disproving Perez's allegations, Rodriguez may have been responsible for inciting the fight in violation of company policy. Further, this explanation provided a clear and reasonably specific factual basis for Rodriguez to have a "full and fair opportunity" to show pretext. Accordingly, CAS met its burden of production, and Rodriguez then had the opportunity to show pretext.

Rodriguez contends that the employer's explanation is pretextual for three main reasons, none of which we find persuasive. Rodriguez first contends that pretext is shown by the fact that CAS had a history of terminating older employees for exercising their workers' compensation rights. In support of this contention at summary judgment, he produced two summary lists—one consisting of younger "employees treated more favorably with respect to their worker's compensation claims," and another of "older employees terminated shortly following worker's compensation claims." The lists contained names, ages, and Bates-stamp numbers only, and Rodriguez barely referenced the lists in his response in opposition to

summary judgment. In these circumstances, the district court did not err in according these lists no probative weight because they were conclusory and unsupported. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (conclusory allegations without specific supporting facts are insufficient to create a genuine issue for trial).

Second, Rodriguez contends that CAS gave shifting and inconsistent justifications for the adverse action, failed to follow its own procedures, and inadequately documented its investigation. An employer's inconsistent or "shifting" reasons for an employment action may constitute evidence that the employer's proffered reason for the challenged employment action is not credible. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193-95 (11th Cir. 2004). Similarly, an employer's failure to follow its own policies can be evidence of pretext. *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination.").

Here, CAS's position was and continues to be that Gonzalez terminated Rodriguez for his possible involvement in the fight with Perez, who also was terminated. Gonzalez received conflicting accounts of the incident from Perez and Rodriguez, he fired Perez immediately, and then he conducted an investigation of Rodriguez's role in the fight. While the investigation failed to either corroborate or rule out Perez's allegations that Rodriguez had instigated the fight, Gonzalez

decided to terminate Rodriguez's employment because Gonzalez could not disprove Perez's allegations.

Rodriguez has not shown any inconsistency that is suggestive of pretext. Rodriguez wonders why he was not fired immediately if CAS supposedly had a "zero tolerance" for fighting, and he suggests that he was only fired once CAS learned he had filed a workers' compensation claim. However, given that Rodriguez claimed to have no knowledge of why the attack happened, Gonzalez reasonably investigated the incident before taking any disciplinary action. The record is also clear that Gonzalez began investigating before Rodriguez filed for benefits. Furthermore, no internal inconsistency exists in the disciplinary report because, while it stated that Rodriguez "did not fight," it also indicated that Rodriguez may have been responsible for instigating the fight: "It appeared that [Rodriguez] said something to [Perez] as he was walking by that angered him." As a whole, Gonzalez's explanation of his investigation and reasons for terminating Rodriguez is consistent with the disciplinary report.

Rodriguez also has not shown that CAS violated its own policies or procedures. CAS's failure to utilize its progressive disciplinary policy, standing alone, is not evidence of pretext because the Employee Handbook specifically provides that fighting or using threatening or abusive language at work may be cause for immediate termination. Additionally, Rodriguez's arguments regarding

11

the adequacy of the investigation and the lack of documentation do not call into question whether Gonzalez, the decisionmaker, gave an honest explanation for his decision to determine Rodriguez.  *See Elrod*, 939 F.2d at 1470.

Finally, Rodriguez claims that CAS punished him more harshly than younger, similarly situated comparators.  The district court addressed and distinguished the comparators offered by Rodriguez, and Rodriguez does not challenge the district court's reasoning in his brief on appeal.[2]  We have reviewed the comparators put forth by Rodriguez and are satisfied that the district court correctly found that none of the comparators were outside of his protected age group, were treated more favorably than Rodriguez based on similar conduct, and were otherwise similarly situated to permit comparison.  *See Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) ("When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." (internal quotation marks omitted)); *see also Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) ("Different supervisors may impose different standards of behavior, and a new

---

[2] The district court did not address two of Rodriguez's proffered comparators, finding that Rodriguez had failed to provide supporting documentation for them.  Rodriguez has abandoned his challenge to that determination by failing to address it in his initial brief on appeal. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014).

supervisor may decide to enforce policies that a previous supervisor did not consider important.").

Overall, Rodriguez has not produced sufficient evidence for a reasonable jury to conclude that CAS's explanation for his termination was pretextual. Even assuming that the reason Rodriguez was terminated was a bad one, or that Gonzalez was mistaken that Rodriguez may have instigated the fight, Rodriguez has identified no evidence to show that CAS's proffered reason was not the true reason or that age discrimination was likely the real reason. *See Alvarez*, 610 F.3d at 1266-67. Rodriguez cannot prevail simply by quarreling with the wisdom or fairness of CAS's decision to terminate him despite finding no conclusive evidence that he was involved in the fight. *See id.* at 1266. We affirm the grant of summary judgment to CAS on Rodriguez's ADEA and FCRA claims.

## IV.

The Florida Workers' Compensation Law ("WCL") contains an anti-retaliation provision: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. Ann. § 440.205. Claims brought under the statute are analyzed under the same burden-shifting framework as Rodriguez's age-discrimination claims, and the same principles governing pretext also apply. *Ortega v. Eng'g Sys.*

13

*Tech., Inc.*, 30 So. 3d 525, 528-29 (Fla. Dist. Ct. App. 2010). Once a defendant provides a legitimate reason for the adverse action, the burden shifts back to the plaintiff to produce sufficient evidence for a reasonable factfinder to conclude that the reason is merely pretext for prohibited, retaliatory conduct. *Id.* at 529.

Here, assuming *arguendo* that Rodriguez established a *prima facie* case of retaliation under the WCL, he has not shown that CAS's reason for his termination is pretextual. While a close temporal proximity between Rodriguez's claim for compensation under the WCL and his termination exists, Rodriguez offered no evidence that CAS's reason for terminating his employment was not what actually motivated its conduct. *See id.* The record is clear that Rodriguez was already under a disciplinary investigation when he filed for workers' compensation benefits. Nothing in § 440.205 prohibits an employer from discharging an employee who has filed a workers' compensation claim for reasons unrelated to the claim. In addition, for reasons we have already explained, the district court did not err in refusing to consider Rodriguez's conclusory and unsupported summaries of other employees who had filed workers' compensation claims. Thus, Rodriguez did not raise a genuine issue of material fact that CAS's non-discriminatory reason for his termination was pretext for retaliation. *See Ortega*, 30 So. 3d at 529. We therefore affirm the grant of summary judgment on his WCL retaliation claim.

14

## V.

For the reasons stated, we affirm the district court's grant of summary judgment in favor of Defendant-Appellee CAS on Plaintiff-Appellant Rodriguez's claims of age discrimination in violation of the ADEA and the FCRA and retaliation in violation of the WCL.

**AFFIRMED.**