[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13155
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00601-KD-N

CASSANDRA A. MATTHEWS,

Plaintiff - Appellant,

versus

CITY OF MOBILE, ALABAMA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 16, 2017)

Before HULL, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

The City of Mobile, Alabama terminated Cassandra Matthews, an African-American woman, after she filed multiple complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Matthews sued the City for claims of racial discrimination and retaliation.  The district court entered summary judgment because Matthews failed to state a prima facie case of racial discrimination and failed to demonstrate that the City's legitimate non-discriminatory reason for terminating her was a pretext for discrimination or retaliation.  We agree and therefore affirm.

## I.    BACKGROUND

Matthews began her career with the City in 1996 as a Public Safety Dispatcher I in the Mobile Police Department's Communications Unit, which received calls placed with the City's 911 system.  Matthews subsequently was promoted to Public Safety Dispatcher II.  As a Public Safety Dispatcher II, when the City received 911 calls answered by Public Safety Dispatcher I employees, Matthews was responsible for, among other things, identifying emergencies, handling priority calls, dispatching law enforcement officers and notifying the officers of any updated information provided by a caller.

2

## A.    The November 21 Priority Call and Matthews's Termination

On November 21, 2012, Matthews was working when a citizen called 911 to report a fight and request medical help. The Public Safety Dispatcher I (operator) who received the call coded it as a priority call and sent the information to Matthews, who dispatched three officers to the scene. Immediately after dispatching the officers, Matthews took a personal phone call. The operator remained on the line with the caller, who reported that the subject of the call had a weapon. Although the operator tried to notify Matthews about the weapon via the computer system's complaint screen, Matthews did not provide the dispatched officers with that updated information. Matthews claims that her call waiting notification light on her console was not operating properly, and she never received notification about the report of a weapon. When the dispatched officers reached the scene, in fact there was no weapon.

The Public Safety Dispatcher I notified her superiors that Matthews had failed to update the officers about a possible weapon on the scene. Matthews met with Michael Williams, Mobile's Chief of Police, who told her that she was going to be transferred to the Traffic Unit while the City investigated the circumstances surrounding the phone call and her failure to let the officers know about the report of a weapon. During this meeting, Williams mentioned EEOC complaints that Matthews had previously filed against the City, telling her that he was "sick and

3

tired" of her EEOC complaints.  According to Matthews, during this meeting Williams had her EEOC complaints on his desk.  Matthews was then transferred to the Traffic Unit while the City investigated.

The City held a disciplinary hearing about Matthews's handling of the November 911 call.  On January 24, 2013, Matthews appeared for her hearing in front of the Trial Board, which consisted of three members, a Deputy Chief of Police and two police captains, all appointed by Williams.  After the hearing, the Trial Board recommended that Matthews be dismissed from service, effective February 1, 2013, because she neglected her duty to update dispatched officers while she engaged in a personal call.  Matthews was then terminated.[1]

## B.    Matthews's Disciplinary History and Previous EEOC Charges

In late 2010, Matthews needed surgery and took an extended medical leave. On her first day back to work in 2011, Matthews was disciplined for engaging in insubordination and failing to obey a direct order.  After a hearing before the Trial Board in January 2011, the City suspended her for 24 hours without pay.

After this suspension, the City charged Matthews with refusing to follow proper procedures or communicate with co-workers when asked questions about 911 calls.  After a disciplinary hearing in May 2011 before the Trial Board, the

---

[1] Matthews appealed her termination to the Mobile County Personnel Board, which affirmed the Trial Board's decision to terminate her employment.

4

City terminated her.  She appealed this decision to the Mobile County Personnel Board, which modified her punishment from termination to a 58-day suspension.[2] When Matthews returned to work after the suspension, the City transferred her from dispatch to the Warrants Department.

In October 2011, Matthews filed her first charge of discrimination with the EEOC, claiming that the City had engaged in racial discrimination when it disciplined her, tried to terminate her, and transferred her.

Matthews contends that she continued to be treated differently than other employees.  After she was told she could not leave her post or use the restroom and failed to receive a promotion, Matthews filed a second EEOC charge in February 2012 alleging racial discrimination.  In May 2012, Matthews filed a federal lawsuit against the City and its employees, asserting various claims including that she suffered discrimination when she was denied a promotion.[3]

---

[2] Trial Board determinations can be appealed to the Mobile County Personnel Board and then further appealed to the Mobile County Circuit Court.  Matthews challenged in court both her 24-hour suspension and 58-day suspension.  The circuit court initially ruled in Matthews's favor, concluding that the disciplinary actions were void because the City failed to follow its procedures in disciplining her.  On appeal, the Alabama Court of Civil Appeals concluded that Matthews failed to properly appeal to the Personnel Board the Trial Board's initial decision terminating her employment, which meant that the trial court lacked jurisdiction to modify her initial termination. *See Matthews v. City of Mobile ("Matthews I")*, 182 So. 3d 547 (Ala. Civ. App. 2014).

[3] The district court granted summary judgment in favor of the City and other defendants. *See Matthews v. City of Mobile ("Matthews II")*, No. 12-353, 2013 WL 5883833 (S.D. Ala. Oct. 31, 2013).

In July 2012, Matthews was reprimanded for failing to obey orders. She filed a third EEOC charge alleging that she was disciplined because of her race and in retaliation for filing previous EEOC charges. In October 2012, the City received a copy of Matthews's third EEOC charge. On November 20, the EEOC dismissed the charge and notified Matthews of her right to sue the City. Also in November 2012, Matthews filed an internal complaint of harassment and discrimination to the Mobile Police Department's Anti-Discrimination Committee. The Committee found that Matthews failed to produce "any credible evidence to substantiate [her] claim of harassment or racial discrimination." Williams Letter, Doc. 59-3 at 1.[4] The Committee then closed the matter without any further action.

In May 2013, Matthews filed a fourth EEOC charge alleging that her February 2013 termination was the product of race discrimination, a hostile work environment, and retaliation. The EEOC also dismissed this charge and notified Matthews of her right to sue.

Matthews sued the City under Title VII for race discrimination, retaliation, and retaliatory hostile work environment. The City moved for summary judgment on Matthews's claims. In her opposition to the motion, Matthews argued, based on differences between how the City treated her and other employees, that she was terminated because of her race. Matthews attached three declarations, by

---

[4] Citations to "Doc. __" refer to numbered docket entries in the district court record.

6

Communication Unit employees Angela Wright, Lakeisha M. Shoots, and Stephanie Warne, which stated that other employees neglected their duties and suffered no discipline.  The declarations stated that other dispatchers had slept on the job or worked while under the influence of prescription medication.

The district court granted the City's motion.[5]  First, the district court determined that any claims regarding events prior to the filing of Matthews's first federal court action against the City, *Matthews II*—that is, events that occurred prior to May 2012—were barred by res judicata.  The district court further ruled that Matthews's December 2012 transfer to the Traffic Unit was not an adverse employment action, and therefore she could not establish claims for race discrimination and retaliation based on that action.[6]  The court then concluded that the City was entitled to summary judgment on Matthews's race discrimination claim because she neither established a prima facie case nor came forward with evidence that the City's legitimate, nondiscriminatory reason for her termination was pretext.  The district court additionally granted summary judgment on her retaliation claim because she came forward with no evidence showing that the

---

[5] Because Matthews has offered no argument on her claim for hostile work environment, she is deemed to have abandoned the issue on appeal.  *United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998).

[6] Matthews does not contest on appeal the district court's determination that her claims prior to December 2012 were barred by res judicata or that her transfer to the Traffic Unit was not an adverse employment action.

7

City's legitimate, non-retaliatory reason for her termination was pretext.  This is Matthews's appeal from the dismissal of her race discrimination and retaliation claims.[7]

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment, construing facts and all reasonable inferences therefrom in favor of the nonmoving party.  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact such that "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Conclusory allegations and speculation are insufficient to create a genuine issue of material fact.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of material fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." (internal quotation marks omitted)).

---

[7] We note that Matthews separately challenged her termination in a state court, arguing that her termination was void because the City did not allow her to be present at her hearing before the Mobile County Personnel Board, a claimed violation of her constitutional rights.  A state trial court judge initially agreed and ordered her reinstated.  The City appealed this decision.  But the Alabama Court of Civil Appeals determined that the appeal was moot and that Matthews should have been terminated as of May 2011.  *See City of Mobile v. Matthews ("Matthews III")*, __ So. 3d __, 2016 WL3855051 (Ala. Civ. App. July 15, 2016).  Neither party argues that the Alabama Court of Civil Appeals' decision in *Matthews III* has preclusive effect here, so we need not address that issue.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (stating a party waives a claim when he does not address the issue on appeal or merely makes a passing reference to the issue without plainly raising it).

## III.   LEGAL ANALYSIS

Matthews appeals the district court's grant of summary judgment to the City on her race discrimination and retaliation claims.  The court concluded that Matthews failed to establish a prima facie case of racial discrimination and that she produced no evidence that the City's legitimate, nondiscriminatory reason for terminating her was pretextual.  We agree and affirm the district court's grant of summary judgment.

### A.   Race Discrimination

Title VII of the Civil Rights Act of 1964, in relevant part, prohibits employers from discriminating against or discharging individuals on the basis of race.  42 U.S.C. § 2000e-2.  Matthews alleges the City terminated her employment in February 2013 because of her race.   Upon review, we find no error in the district court's grant of summary judgment in favor of the City on Matthews's race discrimination claim.

Absent direct evidence of racial discrimination, we apply the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to evaluate a race discrimination claim at the summary judgment stage.  *See Underwood v. Perry Cty. Comm'n*, 431 F.3d 788, 794 (11th Cir. 2005).  Under this framework, the employee carries the initial burden of establishing a prima facie case of discrimination on account of race.  *McDonnell*

*Douglas Corp.*, 411 U.S. at 802.  To establish a prima facie case of race discrimination, the employee must show she (1) is a member of a protected racial class; (2) was qualified for the position; (3) experienced an adverse employment action; and (4) was replaced by someone outside of her protected class or received less favorable treatment than an individual outside of her protected class. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

If the employee establishes a prima facie case of race discrimination, the defendant employer must present a legitimate, nondiscriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Should the employer present a legitimate, nondiscriminatory reason for the employment action, the employee must offer evidence that the proffered reason was pretext for discrimination.  *Id.* at 804.  The employee may do so by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted).  At this step, the employee must meet the employer's reason "head on and rebut it." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

We begin by considering whether Matthews established a prima facie case of race discrimination. We assume, for the purposes of this appeal, that Matthews satisfied the first three elements of the prima facie case.

To complete a prima facie case of race discrimination, however, Matthews must show that the City treated her less favorably than an individual outside of the protected class. An employee attempting to show less favorable treatment must present comparators. We have explained that a proper comparator's behavior must be "nearly identical" to the plaintiff's actions to prevent the court from second-guessing an employer's business decision. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Stated simply, the comparator and the plaintiff must be similarly situated in all relevant aspects. *Id.*

We agree with the district court that Matthews failed to present evidence of an individual outside of her protected class who was similarly situated in all relevant aspects. Matthews presented evidence about other employees working as dispatchers who were not terminated even though they were sleeping or under the influence of prescription drugs while on the job. Matthews argues that she was similarly situated to these comparators because their neglect of duties, like hers, could have resulted in dangerous situations. But we agree with the district court that these comparators were not similarly situated because none was accused of the type of misconduct of which Matthews was accused—while on a personal call,

11

failing to update officers about an armed suspect who is the subject of a priority call.   Because Matthews mounted no evidence of a similarly situated individual outside of her protected class who received more favorable treatment, she failed to establish a prima facie case of race discrimination.

But even if we assume that Matthews established a prima facie case of race discrimination, we would still conclude that the City was entitled to summary judgment.  An employer may terminate an employee for a bad reason, a good reason, or no reason at all, as long as the reason is not discrimination.  *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015).  Courts may not second guess the business decisions of employers nor replace the employers' notions of fair dealing with those of judges.  *Id.*  The City offered a legitimate, nondiscriminatory reason for Matthews's termination—that is, her failure to update officers on the scene about an armed suspect while taking a personal call.  And we agree with the district court that Matthews failed to show that this reason was pretextual.

Here, Matthews came forward with no evidence from which a reasonable factfinder could find that the City's proffered reason was pretext.  It is undisputed that she was on a personal phone call when the updated information about the priority call was received and that she failed to inform the dispatched officers about the weapon.  Matthews contends that the City's assertion is unsubstantiated

12

because she was unaware of the update to the November 2012 priority call and because it turned out that there was no weapon on the scene. Even if we assume Matthews's console was not operating properly, however, Matthews failed to show the City's proffered reason was pretext for discrimination. Her evidence of pretext simply quarrels with the City's determination that she neglected her duty. The City may terminate an employee for any nondiscriminatory reason; here, the City asserts that reason is that Matthews's took a personal call while on an emergency dispatch and neglected her duty. Matthews failed to offer evidence that the City's reason was contradicted, false, or racially motivated.

Matthews also argues that the City's proffered reason was pretextual because the Trial Board considered her past disciplinary history when deciding to terminate her.[8] She argues that the Trial Board's reliance on her disciplinary history was flawed because years later a state court trial judge ruled that the previous disciplinary actions were void. Given the Alabama Civil Court of Appeals's subsequent conclusion that the trial court lacked jurisdiction over the matter, we cannot see why the state trial court's decision is of any significance in this case. *See Matthews I*, 182 So. 3d 547. In any event, the Alabama state trial

---

[8] The evidence on which Matthews relies to support her conclusion that the Trial Board considered her past disciplinary history is the transcript of the testimony of a Trial Board member at the Mobile County Personnel Board's hearing on Matthews's appeal of her termination. But this transcript was not before the district court and is not included in the record on appeal. *See Meadows v. Cagle's, Inc.*, 954 F.2d 686, 693 (11th Cir. 1992) ("This court cannot assume a fact not in the record.")

court's decision does not change the fact that at the time of Matthews's hearing the Trial Board understood that she had a lengthy history of past discipline. We cannot second guess the City's decision to terminate Matthews based on its business judgment concerning her history. The district court did not err in granting summary judgment to the City on Matthews's race discrimination claim.

## B.    Retaliation

We now turn to Matthews's retaliation claim. She claims that the City retaliated against her for her EEOC charges by terminating her employment in February 2013. Title VII prohibits employers from taking adverse employment actions against employees who "opposed any practice" made unlawful by Title VII, or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). Even though Matthews established a prima facie case of retaliation, summary judgment in favor of the City is appropriate nevertheless because there is no evidence that the City's reason for terminating Matthews was pretextual.

Matthews offers only circumstantial evidence of retaliation, so we again apply the *McDonnell Douglas* burden-shifting framework. *See* 411 U.S. at 802. We begin by considering whether Matthews established a prima facie case of retaliation. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993). To establish a prima facie case of retaliation, an employee must show that

14

she (1) engaged in a statutorily protected activity and (2) suffered an adverse employment action, and (3) that the adverse action was causally related to the protected activity. *Id.*

The parties do not dispute that Matthews engaged in a statutorily protected activity when she filed a charge of discrimination with the EEOC and complained to the Anti-Discrimination Committee, or that she suffered an adverse employment action when she was terminated. They do disagree about whether Matthews came forward with evidence showing that the adverse employment action was causally related to her protected activity. Like the district court, we conclude that Matthews provided sufficient evidence of a causal link between the protected activity and the adverse employment action.

We have explained that the causal link requirement is construed broadly so that an employee "merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (internal quotation marks omitted). An employee may be able to establish a causal link based simply on temporal proximity between the statutorily protected activity and the adverse employment action. *Thomas v. Cooper Lighting Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Timing alone will be sufficient only when the two events are "very close" in time. *Id.* When there is a gap of several months between the statutorily

15

protected expression and the adverse employment action, the employee must come forward with other evidence showing causation. *Id.*

We conclude that Matthews established a causal link. We acknowledge that approximately four months passed between Matthews's filing of her EEOC charge of discrimination and her termination, and two months passed after Matthews's complaint to the Anti-Discrimination Committee. Even if the temporal proximity of these events and Matthews's termination is not enough to automatically establish a causal link, however, Matthews satisfied her burden by coming forward with other evidence of a causal link. Before she was terminated, Williams told her that he was "sick and tired" of her EEOC complaints. This statement is sufficient to establish a causal link for a prima face case of retaliation.

Because Matthews established a prima facie case of retaliation, the burden shifted to the City to provide a legitimate, non-retaliatory reason for the adverse employment action. *Hairston*, 9 F.3d at 919. We agree with the district court that the City provided a legitimate, non-retaliatory reason for Matthews's termination: her neglect of duty during the November 2012 priority call.

To survive summary judgment, then, Matthews was required to establish that the City's proffered reason was pretextual. Matthews again argues that she did not neglect her duties because her console did not operate correctly. We reject this argument for the same reasons we discussed above.

16

Matthews also advances that neglect of duty was not the real reason she was terminated by pointing to Williams's statement that he was "sick and tired" of her EEOC complaints, which she contends shows that Williams fired her for filing those complaints. But we cannot say that Williams's statement shows weakness in or contradicts the City's reason for terminating Matthews. It is speculative to conclude that this testimony shows the City terminated Matthews for filing EEOC complaints because the Trial Board, a separate entity, albeit one whose members were appointed by Williams, recommended her termination, and there is no evidence that the Trial Board was aware of Matthews's history of EEOC complaints. *Cordoba*, 419 F.3d at 1181. Because we cannot say that a reasonable factfinder could find that Matthews's termination for neglect of duty was pretextual, the district court properly granted summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

**AFFIRMED.**